M. K. Goetz Brewing Company, appellee, v. Frank M. Waln, appellant.

Filed December 18, 1912. No. 16,854.

1. **Courts: Rule to Inferior Tribunals: Appeal: Amendment of Record.** "The district court may, by rule, compel an inferior court or board to allow an appeal, or to make or amend records according to law, either by correcting an evident mistake or supplying an evident omission." Comp. St. 1911, ch. 19, sec. 28.

2. **Appeal: Correction of Transcript.** Where an appeal from a judgment of the county court is taken within the time required by law, the transcript being filed in the district court, but the county judge failed to attach his certificate thereto, the district court may by order direct the transcript to be returned to the county judge for proper certification.

3. ———: ———: **Neglect of County Judge.** In such case the failure of the county judge to return the transcript duly certified within the time allowed by law for taking the appeal will not deprive the district court cf jurisdiction over the cause.

4. ———: ———: **Nunc Pro Tunc Entry.** Where, upon the return to the district court of the transcript duly certified, it is discovered that at the close of the trial the county judge announced the judgment to be that the plaintiff's action was dismissed and judgment rendered in favor of defendant against the plaintiff for the costs, but that in entering the judgment the order dismissing the case was inadvertently omitted from the record, and that fact is established to the satisfaction of the district court, it is within the power of that court to again return the transcript in order that a *nunc pro tunc* entry may be made according to the fact. While the proceeding was prcʾably irregular, the district court was not deprived of jurisdiction thereby.

5. **Novation: Requisites.** In order to constitute a novation, by which the original debtor is released, the creditor being bound thereby to discharge the debt as to him and look to another for the payment of his demand, it must appear that there was a legal and enforceable contract made between the new debtor and the creditor by which the claim could be enforced against such new debtor, and that the creditor unconditionally released the original debtor and accepted the third person in his stead.

6. **Appeal: Verdict: Instructions.** Where the verdict and judgment are the only ones which could be legally returned and entered according to the evidence, the instructions of the court to the jury will not be examined.

APPEAL from the district court for Gosper county: ROBERT C. ORR, JUDGE. *Affirmed.*

*O. E. Bozarth* and *W. S. Morlan,* for appellant.

*G. Norberg* and *Lambe & Butler, contra.*

REESE, C. J.

This action was commenced in the county court of Gosper county for the purpose of collecting the amount alleged to be due on certain promissory notes executed by defendant to plaintiff. The execution and delivery of the notes being admitted by defendant, both in his answer and testimony, they need not be further described here. Plaintiff failed to obtain judgment in the county court, and sought to appeal to the district court. The county judge prepared a transcript of the proceedings, and the same was filed in the office of the clerk of the district court within the time allowed by law for taking appeals, but the county judge failed to certify to the same. Upon the discovery of this omission the district court, on motion of plaintiff, and over the objection and exception of defendant, directed the transcript to be remanded to the county judge for proper certification. The transcript was returned to the district court duly certified, but the time for appealing had expired. Defendant then objected to the filing of the amended transcript. The objection was overruled, to which he excepted. It was then discovered that the transcript did not contain a formal judgment dismissing plaintiff's action, and, upon the application of plaintiff, and over the objection and exception of defendant, the transcript was again returned to the county court for the entry of a *nunc pro tunc* order and judgment in order to conform to the fact. The *nunc pro tunc* entry was made, the judge certifying that at the close of the trial he did announce and rendered judgment dismissing the suit, but had neglected to so record the fact in his docket.

The cause was then held for trial in the district court over the objection of defendant; the claim being that the district court had no jurisdiction, and that the appeal was not perfected within the time required by law. To say that the county judge was guilty of inexcusable gross carelessness in the whole matter, from which much annoyance, expense and delay resulted, would be but a mild reflection upon his conduct. It is now contended that the district court never acquired jurisdiction over the case, owing to the failure of the county judge to present a "certified transcript" as is required by section 1008 of the code. It is apparent from this record that the failure of the county judge to certify to the transcript was not the fault of plaintiff, and it is the well-settled law of this state that a party cannot be deprived of his appeal by the wrong of the officer, when he is without fault himself. In making the order for the proper certification of the transcript, the court was well within the power conferred by section 28, ch. 19, Comp. St. 1911, which provides: "The district court may, by rule, compel an inferior court or board to allow an appeal, or to make or amend records according to law, either by correcting an evident mistake or supplying an evident omission."

In defendant's answer filed in the county court, he admitted "the execution and delivery of said notes as set out in said petition," of which there were five, amounting on their face to $700, but upon which there were certain credits allowed, amounting to $132.35. The transcript as originally made shows, among other things, the following as occurring at the trial: The five promissory notes were introduced in evidence and were objected to "for the reason the notes have not proper and sufficient verification. Objection sustained by the court, and defendant rests case. It is therefore considered by me that the defendant have judgment against the plaintiff in this action in the sum of $8.90 his costs." This entry is under date of February 12, 1907. A showing was made to the district court that this entry was not in accordance with

the facts, in that the proper judgment was announced from the bench dismissing the suit, whereupon the court ordered that the transcript be referred back for a proper certification as to the fact. The county judge's transcript, under date of November 9, 1907, shows a motion was made by plaintiff to correct the record "by entering judgment in said action according to the facts *nunc pro tunc* as of February 12, 1907." It is recited that due notice of the hearing of the motion was given, and that the hearing was adjourned to November 23, when the parties appeared, and defendant filed a special appearance to object to the jurisdiction of the court, which, "after full argument by attorneys upon both sides," was overruled, and the court "finds of his own knowledge" that the judgment was that the action be dismissed, as announced at the completion of the trial, but that, in making up the record, it was inadvertently omitted. The judgment is then rendered in proper legal form. This is dated November 30, 1907, and was probably filed in the office of the clerk of the district court, as it is contained in the rambling and imperfect record presented here. Objections to that record were presented to the district court and overruled, when pleadings were filed, and the cause tried to a jury on the merits on the 25th day of January, 1910. Less attention should have been given to this subject by us, were it not for the fact that it is discussed extensively in the briefs.

The amended petition filed in the district court is in the usual form for declaring upon promissory notes. The answer thereto is of considerable length, but can be fairly summarized to be that plaintiff, to induce defendant to handle its beer at Swanton, in Saline county, advanced the money necessary to procure a liquor license for the year 1904, and for which the notes were given, and defendant entered upon the business at said place; that, on account of the inferior quality of the beer furnished by plaintiff, the saloon business was not a success, but a failure, by reason of which defendant was caused to lose $1,000; that defendant sold his saloon to one Mitlewski, by the consent

and approval of plaintiff, Mitlewski to assume said indebtedness of defendant; that plaintiff accepted Mitlewski therefor, agreeing to look to him alone for the payment thereof and cancel and surrender the notes of defendant; that, under the contract and agreement of the parties, Mitlewski took charge of said saloon, became indebted to plaintiff for the amount of said notes, and defendant was discharged from all indebtedness to plaintiff. It is further alleged that, during the time defendant was held liable on the notes, he executed a bill of sale to plaintiff upon the saloon fixtures, of the value of $350, which property was appropriated by plaintiff to its use, and for which he claims credit, if held liable to plaintiff on the notes. Judging by the verdict, this claim was allowed by the jury, though for a less amount, and the matter need not be further noticed. The contention is made in the answer that the court was without jurisdiction, owing to the irregularities above referred to, but, as we view the case, this is without merit. The reply was a general denial. The jury returned a verdict in favor of plaintiff for $523, on which judgment was rendered; the motion for a new trial being overruled. Defendant appeals.

The controlling question in the case is as to the defense of novation alleged in the answer. The evidence, including the testimony of defendant, shows, without dispute or conflict, that the money represented by the notes was loaned defendant by plaintiff about the time defendant went into business at Swanton. The alleged agreement to release defendant from the payment of the notes is denied by both plaintiff's managing officer and Mitlewski, but we look to the testimony of defendant for the purpose of ascertaining whether there was any competent evidence that the novation was made by which plaintiff agreed to release defendant and look to Mitlewski as its debtor. We do not think his own testimony was sufficient to prove, or tended to prove, that such an agreement was made. It is shown that Parker, plaintiff's agent, with whom all agreements were made, died before the trial, and

his version of the matter could not be had. It is stated by defendant that the whole of the agreements with Mitlewski and with Parker were oral, no writings having been drawn. Defendant was asked as to what arrangement he had made with Parker in regard to the saloon business. His answer, referring to the transaction with Mitlewski, was: "About that time Parker came to my place and he asked me in regard to what kind of a man this Mitlewski was, and I told him I considered him an all-right man. 'Well,' he says, 'I will see that the Goetz people accepts of him then.' The deal had been made the Saturday night before, providing the Goetz people would accept of him. After the 1st of September I wrote the Goetz people, and they said they would notify Mr. Parker." He presented a letter from plaintiff company dated September 24, 1904, written to him, which says: "Noting your kind favor of the 22d inst., our salesman, Mr. W. H. Parker, informed us of the arrangement made between you and Mr. Fred Mitlewski, which is, in our opinion, entirely satisfactory, and we hope the two notes past due will be paid in the time mentioned in your letter. Thanking you for past favors, and hoping that we may be able to have business dealings together in the future, we remain, Very truly yours, M. K. Goetz Brewing Company, per M. K. G." Defendant was also asked what Parker said to him and what he said to Parker. His answer was: "He asked me what kind of a man Mitlewski was, and I gave him a good recommendation, and told him Mitlewski was to take up my notes and assume all indebtedness. * * * I told him I had sold to Mitlewski provided Goetz Company would accept of the deal. He said it was all right, and that Mitlewski was to take up my notes and enter into a new contract and take up the indebtedness with the Goetz people;" that he then turned the business over to Mitlewski and he had nothing further to do with the business after that. On cross-examination he stated that Mitlewski had been in his employ; that he could not say if Mitlewski had any property, and had never represented

to Parker that he had; that Mitlewski never signed any agreement to pay defendant's debts, but that he did agree to do so with Parker and the witness; that the agreement with Parker was that defendant was to be discharged from liability on the notes; that he never demanded nor received the notes; that he did not know if the business was continued in his name, nor did he know if the funds of the saloon were deposited and checked out in his name. He testified that it was supposed that the business would yield sufficient to pay the notes, but that no arrangement was made for meeting any deficiency resulting from a failure in that regard, and no agreement as to who should pay it. On re-examination he was asked to state what he said to Mr. Parker in regard to Mitlewski paying the notes. His answer was: "I told him that Mitlewski was to take the place and pay off the indebtedness and all the notes against me, and to draw up a new contract with Mitlewski. Q. What did he say to that? A. Parker said it was all right." This is all the evidence adduced by defendant in support of the averment of his answer.

It is elementary that, in a case of this kind, there can be no novation unless the party whom it is asserted assumed and agreed to pay the debt became unconditionally bound to the creditor to pay the debt of the original debtor. There must also be the contract of the creditor, made with the new debtor, to accept him as his debtor. If Mitlewski agreed with defendant that he would become obligated to the creditor, but entered into no contract with the creditor by which he became the debtor of the creditor so that the creditor might have maintained an action against him, there could be no novation, and the original debtor would not be released. In *Izzo v. Ludington,* 79 N. Y. Supp. 744, it is said: "Neither do I think that the facts proved with respect to these orders constitute a novation. That requires the creation of new contractual relations, as well as the extinguishment of old. There must be the consent of all the parties to the substitution, resulting in the extinction of the old obligation,

and the creation of a valid new one (citing authorities). There is no proof here of any consent by McMahon & Wells or the brewing company to release Izzo (the original debtor), and to look to the defendant for their pay, nor of any valid agreement on the latter's part making him liable to them, and therefore the doctrine of novation does not apply." See, also, *Harrington-Wiard Co. v. Blomstrom Mfg. Co.*, 166 Mich. 276; 29 Cyc. 1130; 1 Parsons, Contracts (9th ed.) *217; Clark, Contracts, sec. 260.

We are unable to find any evidence that Mitlewski became indebted to plaintiff, or that plaintiff accepted him as its debtor. This being true, defendant remained liable to plaintiff for the debt evidenced by the notes, and the verdict of the jury and the judgment thereon were the only verdict and judgment warranted by the pleadings and evidence. This renders it unnecessary for us to examine the instructions either given or refused. *Kielbeck v. Chicago, B. & Q. R. Co.*, 70 Neb. 571.

The judgment of the district court is

AFFIRMED.