L. M. THOMAS ET AL., PLAINTIFFS, v. LAVINA GEORGE ET AL.,
APPELLEES: HORSCH LUMBER & COAL COMPANY,
APPELLANT.

FILED JULY 14, 1920. No. 20927.

1. **Mechanics' Liens: LIEN ON WIFE'S LAND: CONTRACT BY HUSBAND.** "A mechanic's lien cannot be created upon the land of a married woman for work done or material furnished in improving such land under a contract with her husband, where the husband acts merely for himself," *Rust-Owen Lumber Co. v. Holt*, 60 Neb. 80, followed.

2. ———: CONTRACT: NOVATION: ESTOPPEL. If one orally agrees with a dealer to purchase a certain quantity of building material to

Thomas v. George.

be used in the construction of a building, and, before any of the material is delivered or any part of the purchase price paid, the vendee enters into a contract with a contractor to take over the same material and use it in the construction of the building, and so expressly notifies the dealer, good faith on the part of the dealer requires that he take an unequivocal position as to whom he will regard as his debtor; and, if his attitude is ambiguous in that respect and the original vendee, believing his oral agreement abrogated, becomes obligated to the contractor, who uses the material, the dealer will be held to have released the vendee in the original oral agreement and estopped to enforce it.

3. Contract: NOVATION: EVIDENCE. Evidence examined, and *held* that there was a novation of the original agreement by which the contractor became substituted for the original vendee and the latter released.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Affirmed.*

*Sterling F. Mutz, W. G. Kline* and *T. F. A. Williams,* for appellant.

*George E. Hager, contra.*

CAIN, C.

L. M. Thomas & Son, plaintiff, brought this suit against Lavina George and E. T. George, her husband, to foreclose a mechanic's lien for hardware furnished in the erection of a dwelling-house on lot 1, in block 99, of University Place, Nebraska, owned by the defendant Lavina George. The defendant Horsch Lumber & Coal Company filed a cross-petition against the defendants George, seeking to foreclose a mechanic's lien for $701.12 for lumber and material furnished in the erection of the same building. The defendant William Seng sought judgment against the defendants George for a balance due for the construction of the dwelling-house. The district court by its decree dismissed the plaintiff's suit, and rendered a money judgment against the defendants George for $391.75 in favor of the defendant William Seng, and dismissed the cross-petition of the

defendant Horsch Lumber & Coal Company. The Horsch Lumber & Coal Company appeals from the decree dismissing its cross-petition, and is the sole appellant. Lavina and E. T. George are the appellees.

Appellant's assignments of error are that the court erred in denying the foreclosure of its lien, and in refusing to render a personal judgment against the defendant E. T. George, and in holding that the Georges were not the original contractors for the material furnished, and that Lavina George had not authorized E. T. George to purchase the material and bind her property for the payment thereof.

We are agreed with counsel for both parties that there are but two questions in this case, as follows: (1) Is the Horsch Lumber & Coal Company, appellant, entitled to establish a lien against the property of the defendant Lavina George? (2) Is the Horsch Lumber & Coal Company entitled to a personal judgment against the defendant E. T. George?

As before stated, this is a suit by which appellant seeks to establish and foreclose a mechanic's lien for lumber and material furnished by it in the erection of a dwelling-house on the lot described owned by the defendant, Lavina George. It is undisputed that she owned the lot and is the wife of the defendant E. T. George. It is settled law in this state that a mechanic's lien is purely statutory and must be based upon contract, express or implied. Rev. St. 1913, sec. 3823; *Bradford v. Higgins*, 31 Neb. 192; *Rust-Owen Lumber Co. v. Holt*, 60 Neb. 80; *Occidental Building & Loan Ass'n v. McGrew*, 86 Neb. 694. It is equally well settled that a mechanic's lien cannot be created upon the land of a married woman for work done or material furnished in improving such land under a contract with her husband, where the husband acts merely for himself, and that whether the husband was the agent of the wife in the matter is a question of fact and will not be presumed from the marital relation alone, and that the failure of

the wife to dissent or her joint occupancy of the premises with her husband does not establish such agency. *Rust-Owen Lumber Co. v. Holt, supra.*

With these propositions of law in mind, we will consider the evidence on this point. The record discloses that Mrs. George herself never had any business relations with the appellant. If, then, she was bound by any contract with appellant, it must have been through the agency of another or from such facts and circumstances known to her as would imply an agreement. On the question of agency, the only evidence is that of Mrs. George herself, who was called as a witness by appellant, thereby placing her credibility beyond impeachment. She testified in the most explicit terms that she never ordered any of the material in question, did not talk to her husband about it, had nothing to do with any negotiations for it, that she had nothing at all to do with it and knew nothing about it, that no one did anything for her in the matter, and that she authorized no one to do anything for her in the premises. Her testimony excludes any idea of agency. Appellant seeks to escape the consequences of this testimony by urging the following: (a) That, in the original answer of the Georges, it was admitted that they agreed to purchase from appellant the bill of lumber in controversy. (b) That Mrs. George admitted in her testimony that her husband was "acting for both of us." (c) That, in testifying to his agreement with appellant to take the material in question, her husband constantly used the plural personal pronoun "we," meaning thereby himself and wife. (d) That the trial court found that both husband and wife had jointly contracted with Seng for the same material. (e) That Mrs. George paid for part of the material and thereby ratified the contract her husband had made with appellant.

As to the first of these points, it appears that the original answer in this case was verified by the husband alone, and the wife knew nothing about it; that the

admission contained in it is on behalf of the husband alone; and that later the wife filed an amended answer containing a general denial. In view of these facts, it cannot be said that Mrs. George made the admission claimed. The second point is equally unsound, since it is clear from her testimony that, when she used the plural personal pronoun, it had reference to the general idea of building a house, and had no reference whatever to any contract with appellant. Her husband explained how he chanced to use the word "we" in his testimony by saying that it was a habit of his and he referred to the family, and that in dealing with appellant he acted for himself. In any event nothing he could say about it would bind his wife without her knowledge. The finding of the trial court upon Seng's cross-petition can have no possible relevancy here, because it may have been a default or acquiescence. The only evidence that Mrs. George paid anything is that she paid $40 upon an order of Seng, the contractor. Far from being a recognition of any contract with appellant, this is a recognition of a contract with Seng. There is no merit in any of these propositions, and they do not in the least detract from the probative force and effect of the testimony of Mrs. George. There was no evidence that Mrs. George knew where any of the material came from. We therefore must hold that neither by agency nor by implication of law was there any contract between Mrs. George and appellant. It follows, of course, that appellant has no claim whatever against her or any lien on her property.

There is a further phase of this case, consideration of which not only will confirm the foregoing conclusion, but incidentally will dispose of appellant's claim to a personal judgment against E. T. George. Appellees, while admitting that Mr. George verbally agreed to purchase from the appellant the lumber and material used in the construction of the building, contend that, before delivery of any material or payment of any money, the

agreement was canceled by substituting William Seng, the contractor, in the place of Mr. George as purchaser, and that thereby a new contract was made and Mr. George released from the old one. Decision of this question depends upon the facts, which will be briefly stated. In the spring of 1917, E. T. George and his brother, J. D. George, were both contemplating building residences in University Place, and J. D. George had obtained a proposition from appellant to furnish him a bill of lumber at the price of $1,300. E. T. George, defendant, told his brother to ask appellant if it would duplicate the bill for him at the same price, and the brother did so, and appellant replied in the affirmative. Thereupon, E. T. George authorized his brother to tell the appellant that he would take the bill of lumber for the price named and appellant was so informed. Mr. N. W. Kallemyn was the manager and agent of appellant throughout. No part of the lumber or material was delivered, no payment was made, and no written memorandum made. The statute of frauds was not pleaded, but the sufficiency of the evidence is before us. A few days later Mr. George entered into a written contract with the defendant William Seng which provided that Seng, who was a contractor, should build the house and furnish all lumber and material for $2,925 plus some extras not necessary to be noticed. A little later, and about June 15, 1917, E. T. George and J. D. George visited the office of appellant, and E. T. told Mr. Kallemyn, the manager, that the bill of lumber he had agreed to take had been taken by Mr. Seng at the terms previously agreed upon, and that Mr. Seng had contracted to build the house. This testimony is corroborated by J. D. George, and even by Mr. Kallemyn himself, who testified on cross-examination as follows: "Q. And they told you in substance—I am not trying to use the exact words—that Mr. Seng would use this bill of lumber and order it out just as he would use it in the

house, and that in that way the bill you and Mr. George had agreed upon would be used in Mr. Seng's contract, or that in substance? A. Yes, sir." This, he admits, was before any of the lumber was delivered. It will be seen that there is no dispute about appellant being notified of the contract with Seng and of Mr. George's arrangement to substitute Seng for himself in the agreement with appellant. There is a conflict, however, in the evidence about what Kallemyn said in reply. E. T. George testifies that Kallemyn said; "It don't matter much to me, just so I get my money; that is what I am interested in." Kallemyn testifies that he said to George that when the lumber went out it would be charged to him. This J. D. George denies. Nothing further was done or said in that regard. Seng built the house from lumber and material delivered to him or his workmen by the appellant; and it appears that George has paid Seng the full contract price, which included the judgment for $391.75. It will be seen that whether or not there was a novation depends upon what was said and done when George notified appellant of the substitution of Seng for himself and the conduct of the parties thereafter. J. D. George testified that the substitution seemed agreeable to Kallemyn. E. T.'s testimony shows that Kallemyn answered the proposal of substitution ambiguously. However, we cannot think there is much doubt that he must be held to have acquiesced in the proposal. He knew that, if George acted upon his contract with Seng, it would be irrevocable and George would be absolutely obligated by it. The proposal of substitution was squarely put up to him. Good faith and fair dealing required Kallemyn to take an unequivocal position. If, by his evasion or ambiguous response, Mr. George was induced to believe that the old contract was superseded by a new one which released him from the old, appellant should not now be permitted to stand upon the old, when George has performed the new. A creditor cannot have two different debtors on a single debt and

Thomas v. George.

reserve a choice between them and exercise it to the injury of either. Circumstances may arise which require a man to speak directly and frankly, and this instance was one of them. George testified that he had no doubt, from his talk with Kallemyn, that he was released from the old contract. Moreover, both parties acted upon the new contract substituting Seng, George by performing it, and appellant by delivery of the lumber and material to Seng. Our conclusion is that there was a complete novation and both parties thereto were released from the old contract. Counsel for appellant especially requested us to examine the case of *Western White Bronze Co. v. Portrey,* 50 Neb. 801, and we have done so. The case holds that there can be no novation of a debt in the absence of an unqualified discharge of the original debtor by the creditor. As we have already held that there was an unqualified discharge of George by the consent and conduct of the appellant, the case cited is not in conflict with this opinion. It follows, of course, that, the agreement between Mr. George and appellant having been abrogated, no personal judgment can be rendered against him.

We think that the judgment of the district court was right, and we recommend that it be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.

The following opinion on motion for rehearing was filed February 10, 1921. *Former opinion modified and judgment of district court reversed.*

1. **Husband and Wife: AGENCY.** A husband may act as the agent of his wife in contracting for materials to be used in the construction of a house upon property, the separate estate of his wife, and the question of agency is a question of fact, to be determined from the circumstances of each particular case.

2. **Mechanics' Liens:** LIEN ON WIFE'S LAND: CONTRACT BY HUSBAND. When it is shown that a husband and wife plan a home together, to be built upon the property of the wife, and that the wife draws the plans and shares in directing and controlling the undertaking, helps select the materials, frequently visits the building during the course of construction, to see that the plans are being carried out, the acts of the husband, in ordering materials in furtherance of the undertaking, *held* to be binding upon the wife, and *held* to show sufficient authority from the wife to support a mechanic's lien upon her property.

3. **Contracts:** NOVATION. An agreement, in order to result in a novation, must contain two stipulations, expressly stated or necessarily and clearly inferred from the terms used—one, to completely extinguish an existing liability, and the other, to substitute a new one in its place.

4. ———: ———: BURDEN OF PROOF. Whether the original debtor is completely released must be determined as a question of fact, depending upon the intention of the parties, and the burden of proof is upon the original debtor to show such release and novation, when he asserts it as a defense.

FLANSBURG, J.

On motion for rehearing. The questions arise on the cross-petition of the Horsch Lumber & Coal Company, seeking to recover a money judgment against defendants E. T. George and Lavina George, husband and wife, and to foreclose a mechanic's lien upon the property of Lavina George, the company having furnished lumber for the construction of a house upon property, the separate estate of Mrs. George.

One defense is that the company furnished lumber upon the contract of E. T. George, and that he did not act, in contracting for such lumber, as the agent of his wife, but for himself alone. The record does not sustain that defense.

Mrs George testified that she and her husband had for some time talked of building a home upon the property in question; that she, herself, drew a great number of plans for the house and finally they decided upon one of them; that she and her husband then met with a

contractor, at their home, and went over the plans and estimated the cost; that at that time she knew that her husband had made a contract with the Horsch Lumber & Coal Company for lumber to go into the house, and that it was then agreed that the contractor should take the lumber, so contracted for, and use it in the construction of the building. She said, however, that she paid no attention to the question of materials, and if she saw the lumber bill figures it was just as the men had them there, figuring upon them. She said that the matter of providing materials was left to her husband, and that he acted "just as any husband would by working together in building a house;" that she paid little attention to the business arrangements or contracts, since she knew Mr. George was attending to that. She paid attention to the details of the plan of the house. Further testimony of hers follows: "Q. Did you ratify what he had done or did you object to it? A. I didn't do either. I knew that he was doing the right thing. I suppose you would say I ratified what he was doing. Q. Well, was it satisfactory to you? A. All that he has done about building the home has been satisfactory to me." They talked over changes in the plans with the contractor and her testimony was: "I gave my choice of my idea of the home. Q. And your choice was the one used in most of the instances, wasn't it? A. Yes, sir." When construction of the building was commenced, one of the plans drawn by her was tacked to a board and kept upon the premises by the carpenters as a guide for their work. During construction she was frequently at the building to see that the work was progressing according to the plans, sometimes, she says, 10 or 12 times a day. She personally selected the windows which were put into the building. Many changes were made in course of construction, which were talked over and to which she agreed.

In fact, all the testimony tends to but one conclusion: That Mrs. George and her husband planned and constructed the house together as a common enterprise,

and that Mr. George, in all he did, acted with the full authority and approbation of his wife.

The facts in the case, therefore, do not bring it within the rule announced in *Rust-Owen Lumber Co. v. Holt*, 60 Neb. 80, that mere knowledge by the wife that her husband is constructing buildings on her premises does not establish agency, when he acts for himself alone, and where she takes no part in the planning or direction of the construction of the house.

The question of whether the husband acts with authority from the wife and is her agent is a question of fact to be determined from the circumstances of each particular case. Mere knowledge that a building is being constructed by her husband upon her premises, when that fact stands alone, is insufficient to show that her husband acted as her agent. Agency in such a case will not be presumed from the marital relation; but the fact that the wife has such knowledge, in the light of other evidence, may be of strong corroborative value. Owing to the close relationship existing between husband and wife, an agency by the husband may be created by slight circumstances. It is unnecessary that they enter into any formal contract of agency, nor is it necessary that the wife expressly state to her husband that she gives him authority to act. Such an agency may be inferred from things said and acts done.

Where it is shown that a husband and wife plan a home together, to be built upon premises constituting the wife's separate estate, and where she draws the plans and shares in directing and controlling the undertaking, helps select certain materials, is present during and takes part in the conversation with the contractor at the time the contract for the construction of the building is entered into, frequently visits the building during the course of construction, to see that the plans are being carried out, the acts of the husband, in ordering materials and labor in furtherance of such common undertaking, are sufficiently shown to have been done under

such authority from the wife as will bind her through her husband as agent. *McCormick v. Lawton*, 3 Neb. 449; *Bradford v. Peterson*, 13 Neb. 96; *Milligan v. Alexander*, 72 W. Va. 615; *Bodey v. Thackara*, 143 Pa. St. 171; *Jobe & Meanor v. Hunter*, 165 Pa. St. 5; note, 4 A. L. R. 1042; 13 R. C. L. p. 1173, sec. 200.

It may be further pointed out in this connection that the trial court made a specific finding that Mrs. George had bound herself as a party to the contract made with the contractor, and her testimony shows that, at the time of the execution of that contract, she was informed of the arrangement between her husband and the lumber company for the furnishing of lumber. Had she not been informed of that arrangement prior to that time, her action, after such information had been imparted to her, in then proceeding to a contract with the contractor, whereby he was to take over the lumber bill and use the lumber in the construction of the house, constitutes a ratification of an arrangement made between her husband and the lumber company, and shows an authority from her that the particular lumber ordered should be used upon her premises. It is our opinion, therefore, that a mechanic's lien would attach.

The defendants George and his wife assert, as a further defense, that, after Mr. George had made the contract with the company, the company agreed to turn the lumber bill agreement over to the contractor of the defendants, and that the defendants were thereby released by a novation.

The original lumber bill was $1,300. In the beginning Mr. George expected to conduct and supervise the erection of the building himself. Later it was decided that the work would be let to a contractor. When Mr. and Mrs. George went over the matter of construction with the contractor, changes were made in the plans, and it became apparent that extras would be necessary on the lumber bill. At the time of this conversation, the Georges agreed with the contractor that he should take over the

lumber bill that Mr. George had contracted and use the lumber in the construction of the building. Mr. George then, in company with his brother, went to the lumber company, and the conversation took place between Mr. George and the manager of the company upon which the defendants rely as showing a novation.

Mr. George relates the conversation thus: "I told Mr. Kallemyn (the lumber company's manager) that the bill of lumber that we had agreed to take had been taken by Mr. Seng (defendants' contractor), that he had contracted to build our house and he would take it on the terms that we had talked over with him. * * * I don't recall just what may have been said more than this, that we had let the contract to Mr. Seng and he was to erect the building and furnish the material, taking this bill of lumber that we had agreed to take from them. * * * He (Mr. Kallemyn) said; 'It don't matter much to me, just so I get my money; that is what I am interested in.' * * * Q. At that time all you had said to Mr. Kallemyn was—that is, as to these extras—that you were to pay for them. Wasn't that the question of your conference at that time with him? A. I think so, at the time we told him the contract was with Mr. Seng. * * * A. What I told Mr. Kallemyn was that there were certain things that were to be extras; we knew they would be in there, and they would be extra, above this bill. Q. And 'we' were to pay for them, or words to that effect? A. Well, I don't know just what I said there, but the thought was that this was a part of the contract, and this would be above the contract price of the lumber; here was a certain bill of lumber figured, but Mr. Seng couldn't take that bill of lumber without these additional doors, windows, and change to the more expensive floor; we had talked that over, so we expected to pay for the extras on those. Q. Who do you refer to as 'we'? A. Myself. Q. And not Mr. Seng; you don't mean that he was a part of that 'we'? You mean yourself?. A. Well, I went to Mr. Kallemyn, who was furnishing this lumber,

Thomas v. George.

and I wanted him to understand that there were certain things that we would pay—that I was to pay for, if that suits you better—if it went above that in my settlement with Mr. Seng.''

Mr. George's brother testified: ''My brother told Mr. Kallemyn that he had let the contract for his building to Mr. Seng, and that he was to take the lumber bill, and that my brother said I am to pay extra for what doors and windows and floors there is used, over this bill,'' and that Mr. Kallemyn answered either ''that the house is good for the pay,'' or that he was ''interested in getting'' his pay, or ''something to that effect.'' Mr. George did not remember whether anything was said in that conversation as to whom he would make payment for the extras; whether he would pay the contractor or the company direct. Upon that point his testimony is quite indefinite, but his testimony is that he had in mind that he would pay the contractor, who in turn should pay the company.

The company received $1,389.62 on its account. This more than covers the original bill of $1,300. The extras amounted to $790.74, and there remains unpaid a balance of $701.12. The conversation had with regard to extras is quite important. The question presented is whether such conversation is sufficient to support a finding of novation. The testimony on behalf of the company, which conflicts with that of defendant George, and is to the effect that Mr. George was, in this conversation, affirmatively told that he would be looked to personally for pay, and would not be released, it is unnecessary to consider. Mr. George naturally would desire that his contractor take the lumber that he had contracted for. Had the contractor purchased lumber elsewhere, or entered into an independent contract for lumber, Mr. George would have had two bills of lumber to account for, when he could use only one. In the light of these circumstances, does the conversation, as related by Mr. George and his brother, indicate that Mr. George was to

be entirely released and discharged from further obligation to the company, and that the contractor was to be accepted as a substitute in his place and relied upon alone for the payment of the purchase price?

A novation will never be presumed. The complete discharge of the original debtor must be shown to have been expressly agreed upon, or must be necessarily and clearly inferred from the express terms of the agreement. An agreement, in order to result in a novation, must contain two stipulations: One, to completely extinguish an existing liability, and the other, to substitute a new one in its place. Before the original debtor will be discharged and another party substituted in his place, the burden is upon the original debtor to show, just as in proving any other contract, that such was intended, not only by him, but also by the creditor and by the party to be substituted. *Goetz Brewing Co. v. Waln,* 92 Neb. 614; *Western White Bronze Co. v. Portrey,* 50 Neb. 801; *Indiana Bridge Co. v. Hollenbeck,* 99 Neb. 115; *Mercer v. Miles,* 28 Neb. 211; *Barnes v. Hekla Fire Ins. Co.,* 56 Minn. 38; *Studebaker Bros. Mfg. Co. v. Endom,* 51 La. Ann. 1263, 72 Am. St. Rep. 489; *State Bank v. Domestic Sewing Machine Co.,* 99 Va. 411, 86 Am. St. Rep. 891; 20 R. C. L. p. 372, sec. 16; and note, L. R. A. 1918B, 113.

In the case of *Barnes v. Hekla Fire Ins. Co., supra,* the court said (page 41): "It is frequently the case that the creditor consents to the arrangement as a favor, or for the convenience of his debtor; and we apprehend it would be a surprise to the parties, as well as an injustice, in many cases, if it were held to operate as a release of the original liability; and therefore it should distinctly appear, from the express terms of the agreement, or as a necessary inference from the situation of the parties, and the special circumstances of the case, that such was the intention and understanding of the parties, of which the creditor was chargeable with notice."

The statement by Mr. George, that he himself intended to pay for extras if they went above the settlement with Mr. Seng, does not indicate even an intention on his own part that he was to be completely released from all obligation; nor does the statement by Mr. Kallemyn, that he was interested in his pay and that the property would be good for the lumber bill, indicate an intention on his part to release Mr. George. Furthermore, there was no valid reason at that time why Mr. George should be released, since it was contemplated by all concerned that he was to be the ultimate source from which the money to satisfy the lumber account would be forthcoming. We cannot say that a clear intention that no obligation was to continue against him is necessarily nor reasonably to be inferred from this testimony, and it is our conclusion that a novation did not result.

The law protects those furnishing materials and lumber for building purposes, on the theory that the owner may protect himself by seeing that all bills are paid before he settles with the contractor. If a full settlement has been actually made with the contractor in this case before the bills were paid, we cannot, in this suit, relieve against the situation. The defendants' remedy is against the contractor, who, Mr. George's testimony shows, is financially responsible.

The former opinion is modified in the respects above indicated, and the case is reversed and remanded for further proceedings in accordance with this opinion.

REVERSED.