FIRST WEST SIDE BANK, A CORPORATION, APPELLANT,
v. DAVID L. HERZOG, CARL I. KLEKERS, NORMAN CAIN,
AND JAMES F. WINDORSKI, APPELLEES.

282 N. W. 2d 38

Filed August 14, 1979.   No. 42273.

James E. Lang of Marer, Venteicher, Strasheim, Seidler, Laughlin & Murray, P.C., for appellant.

J. William Gallup, for appellee Klekers.

Harold W. Kauffman and Larry E. Welch of Gross, Welch, Vinardi, Kauffman, Day & Langdon, for appellees Herzog, Cain and Windorski.

Heard before KRIVOSHA, C. J., BRODKEY, and HASTINGS, JJ., and COADY and NORTON, District Judges.

NORTON, District Judge.

This is an appeal from the judgment of the District Court for Douglas County, Nebraska, finding generally for the defendants-appellees and against the plaintiff-appellant, and dismissing plaintiff's petition.

The facts are as follows: During the year 1970 the defendants-appellees, David L. Herzog, Carl I. Klekers, Norman Cain, and James F. Windorski, hereinafter referred to as defendants, formed a corporation under the laws of Nebraska named Kurland, Inc., hereinafter referred to as Kurland, for the purpose of constructing condominium-type structures. In early 1972 the corporation, by and through its agent and officers, contacted representatives of the plaintiff-appellant, First West Side Bank, hereinafter referred to as plaintiff, for the purpose of securing financing for the construction of eight 4-unit condominiums in Douglas County, Nebraska. On March 20, 1972, the plaintiff issued a letter of commitment to the agent of Kurland in the amount of $70,000 for the construction by Kurland of one unit, the funds to be distributed upon certain conditions, one being that all the defendants execute a personal guarantee for funds loaned to the corporation. On or about March 27, 1972, the defendants executed an instrument running to the plaintiff wherein they jointly and severally guaranteed payment for "all moneys which shall at any time in any manner be due to it from" Kurland, and further agreed "to make good and pay to said First West Side Bank, Omaha any and all debts or obligations of said debtor however

or whenever, heretofore or hereafter, contracted or incurred or however evidenced." The guarantee further provided that the plaintiff could deal with defendants Herzog and Klekers, who were acting as president and secretary of Kurland, respectively, in the loaning of money and other transactions involving Kurland. The guarantee was to be continuous until revoked "by each of us in writing."

Thereafter, on April 3, 1972, the defendants Herzog and Klekers, on behalf of Kurland, executed and delivered to the plaintiff a first mortgage note in the principal amount of $70,000 payable September 30, 1973, with interest at the rate of 8¼ percent.

On July 14, 1972, the plaintiff issued a second letter of commitment to the president of Kurland in the amount of $70,000 for the construction by Kurland of a second unit in Douglas County, Nebraska. On August 10, 1972, the defendants Herzog and Klekers, in their official capacities as president and secretary of Kurland, executed and delivered to the plaintiff a second first mortgage note in the principal amount of $70,000 payable August 10, 1973, with interest at the rate of 8¼ percent.

In both instances, real estate mortgages were made and delivered to the plaintiff, loan funds were disbursed by the plaintiff to Kurland, and the buildings contemplated were built.

When the two notes referred to above came due, Kurland defaulted in the payment of both principal and interest. Efforts were made by the plaintiff to secure payment of the amounts then due, and when these did not succeed, a third note in the amount of $157,000, executed by Kurland on February 1, 1974, was accepted by the plaintiff. This note was a consolidation of the then existing indebtedness under the prior notes, which were thereafter canceled. The new note called for monthly payments of $1,540 commencing March 1, 1974, and continuing through September 1, 1974, when the entire balance of princi-

pal and interest would be due. The note carried interest at the rate of 11 percent per annum. Kurland failed to pay the first and succeeding installments and defaulted in the payoff in September 1974.

In the late summer or fall of 1974, the plaintiff and Kurland entered into an agreement for the rental of the condominium properties through a professional manager, with provision that the excess of rentals above expenses was to be applied to the indebtedness of Kurland. These excesses did not pay the accruing interest. On January 3, 1975, following discussions between certain of the defendants and the plaintiff, Kurland, the defendants, and the plaintiff entered into a written agreement providing for what the parties hoped would be a resolution of the unpaid obligation of Kurland. In substance, this agreement, after acknowledging the indebtedness of Kurland, the personal guarantees of the defendants, the desire of Kurland and the individual defendants to avoid a foreclosure and other legal action, and the willingness of the plaintiff to forego the same upon certain conditions, provided that "legal" title to the properties would be transferred to two trustees for purposes of private sale during "stated" periods; prior to sale, rentals would be applied to the indebtedness; after the expiration of the stated period, or any extension thereof, if the properties remained unsold the trustees would have the right to sell the properties at public auction; and if the properties were not sold by the trustees at public auction the plaintiff would then have the right to demand "fee simple" transfer of title to it for sale purposes, with any deficiency to be paid by Kurland and the defendants. The agreement also contained a provision entitled "Intentions of the Parties Hereto" which at paragraph VI C. set forth the following language: "It is the further express intention of all parties hereto that this Agreement and execution thereof shall in no way constitute a relief of Guarantors of

their Guaranty of Payment of the indebtedness of Kurland, nor shall it constitute a waiver by First West Side of its right to enforce said Guaranty in any manner provided by law.''

The record is clear that ''legal'' title was never transferred to the cotrustees. As a result, no private sales were ever effected during any ''stated'' periods of time, nor was there any public auction by the trustees. At no point in time did the plaintiff ever demand transfer of fee simple title to it. The record does support the conclusion that title difficulties had developed early in the transaction which created a question in the minds of the parties that title could be effectively transferred as contemplated by the agreement. The record also indicates rentals were collected and applied to interest, and to a reserve fund for delinquent taxes, but the principal obligation remained unsatisfied. On February 20, 1976, the plaintiff made formal demand upon the defendants for payment of this obligation in full under their personal guarantee. Payment was not made and this suit resulted.

Several issues are raised by the parties on this appeal, but for our purposes it is necessary to deal only with the issues of novation in the execution of the note for $157,000, and thereby the extinguishment of the guarantee given March 27, 1972, and the correctness of the order entered by the District Court for Douglas County.

The defendants contend that the execution of the note dated February 1, 1974, constituted a novation in the original financial agreements between the parties, and resulted in the extinguishment of the defendants' personal guarantee dated March 27, 1972. An examination of the evidence will not support this contention. It is obvious that the note given on February 1, 1974, was simply a renewal of existing obligations of Kurland. We have previously held that: ''The taking of a new note for an existing note is a

renewal of the old indebtedness, and not a payment of the debt, unless there is a specific agreement between the parties that the new note shall extinguish the original debt." Department of Banking v. Keeley, 182 Neb. 645, 156 N. W. 2d 803. In order for a novation to occur, the existing liability must be completely extinguished and a new one substituted in its place. See, Sheridan v. Dudden Implement, Inc., 174 Neb. 578, 119 N. W. 2d 64; Thomas v. George, 105 Neb. 44, 178 N. W. 922. The evidence in this case simply does not indicate an intent on the part of the parties to extinguish the original debt and substitute a new agreement in the place of the old. If such an intent could be gleaned from the record prior to January 3, 1975, it completely disappeared at the time of the execution of the agreement bearing that date.

There being no novation in this matter, the guarantee previously given by the defendants remained in full force and effect. There is some evidence in the record that the defendant Klekers may have attempted to limit his responsibility under this guarantee, but his subsequent actions in executing the agreement of January 3, 1975, reestablished his personal liability, if in fact it had ever been changed. An examination of the guarantee shows beyond a doubt that it was initially intended to be nothing more than an absolute personal guarantee by the defendants to guarantee the indebtedness of Kurland. In that form it was enforceable against them jointly and severally at any time without demand and notice after default by the maker. See Home Savings Bank v. Shallenberger, 95 Neb. 593, 146 N. W. 993. However, an absolute guarantee can be modified and become a conditional guarantee, through the subsequent acts of the parties and where there is an intent on the part of the party benefiting from the guarantee to impose conditions which were not previously applicable. In this instance, it is obvious that prior to January 3, 1975, the plaintiff, upon de-

fault by Kurland, could have proceeded directly against the defendants jointly and severally for collection of the obligation involved, but in the execution of the agreement bearing that date, certain procedures and conditions for the collection of the money due from Kurland were agreed upon between the parties, indicating a willingness to limit the guarantee. This agreement was prepared by counsel for the plaintiff. As such, its terms will be strictly construed against the plaintiff in resolving doubts as to its meaning. See Custom Leasing, Inc. v. Carlson Stapler & Shippers Supply, Inc., 195 Neb. 292, 237 N. W. 2d 645.

A full examination of the record discloses that the plaintiff has not exhausted all of the procedures and conditions intended by the agreement. It also discloses some frustration of performance, by virtue of the title problems heretofore mentioned, and it is obvious that this frustration did not arise solely ·by fault of the plaintiff. Nonetheless, the defendants are entitled to the benefits of the agreement prior to payment of the indebtedness of Kurland under their guarantee. One of these benefits is complete performance by the plaintiff, unless prevented therefrom by Kurland or the defendants. The record does not effectively disclose the latter.

Through all of this, we are led to the inescapable conclusion that this particular action was brought prematurely. The trial court dismissed the petition of the plaintiff without qualification. Generally, this court will not change an order of the trial court if there is sufficient evidence in the record to support that order. In this case, however, it appears that a dismissal of plaintiff's petition without any qualification thereto is not supported by the evidence, and the judgment of the trial court should be modified to show that the dismissal of plaintiff's petition, while proper in itself, should be without prejudice to plaintiff's rights, so that it can first pursue its remedies

against Kurland and thereafter against the defendants for any deficiencies arising herein.

The judgment of the trial court is affirmed as modified.

AFFIRMED AS MODIFIED.