KENNETH SHREVES, AS TRUSTEE IN BANKRUPTCY FOR
JOHN J. SALONIS MASONRY, INC., BANKRUPT, APPELLANT,
v. D. R. ANDERSON CONSTRUCTORS, INC., APPELLEE.

293 N. W. 2d 106

Filed June 10, 1980.  No. 42842.

James E. Lang of Marer, Venteicher, Strasheim,
Laughlin, & Murray, P.C., for appellant.

Malcolm D. Young of Young & White, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN,

434

CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action by the bankruptcy representative of a subcontractor against a contractor to recover money allegedly due under a written subcontract. The jury returned a verdict for the plaintiff in the sum of $15,079.11. The District Court sustained defendant's motion for a new trial and vacated the jury verdict. The plaintiff has appealed.

The plaintiff is the trustee in bankruptcy of John J. Salonis Masonry, Inc., a Nebraska corporation. On July 24, 1974, Salonis entered into a written subcontract with the defendant, D. R. Anderson Constructors, Inc., the general contractor, to perform the work specified in the contract in accordance with the plans and specifications for the construction of a school building in Omaha, Nebraska. The subcontract price was $183,900. Two subsequent deletions were made from the subcontract requirements by written change orders which reduced the total contract amount to $182,357.

Section 4 of the written contract provides:

Changes. The contractor may at any time by written order of Contractor's authorized representative, and without notice to the Subcontractor's sureties, make changes in, additions to and omissions from the work to be performed and materials to be furnished under this Subcontract, and the Subcontractor shall promptly proceed with the performance of this Subcontract as so changed. Any increase or decrease in the Subcontract price resulting from such changes shall be agreed upon in writing by the parties hereto. Any claim for adjustment of the subcontract price under this Section must be made in writing within ten days from the date such changes are ordered. The Subcontract

price shall be equitably adjusted on account of any such changes, subject to any applicable provisions of the contract between the Contractor and the Owner.

Plaintiff's petition alleged that Salonis fully performed all the work specified in the subcontract. The petition also alleged that Salonis had performed additional masonry work for the defendant.

Plaintiff alleged that the defendant orally requested Salonis to do certain additional work because of defective work of the Ray Martin Company, another subcontractor, and promised that Salonis would be paid for the additional work requested. It was alleged that the fair value of the additional Martin work was $8,356.

The petition also alleged that the defendant requested that Salonis performed additional work of cutting approximately 1,500 blocks and promised to compensate Salonis for its labor. The fair value of the labor was alleged to be $1,500.

The petition also alleged that the defendant requested that Salonis perform additional work of in replacing and patching in connection with electrical and other masonry contract work and promised that Salonis would be compensated for the labor and materials furnished, and the fair value of that work was $2,875.

The petition alleged that defendant had paid Salonis the total sum of $179,489.89 for the work under the contract and prayed judgment against the defendant for the sum of $4,410.11 due for the work specified in the subcontract, and for the sum of $12,731 due for the additional labor and material furnished in connection with the additional work referred to in the petition.

The defendant's answer denied that Salonis had properly completed the specified work under the contract. The answer also generally denied all the allegations of additional work except for the Martin

work. The defendant admitted that it had requested Salonis to perform additional masonry work resulting from the defective work of the Ray Martin Company and had promised that Salonis would be paid for the proper labor and material expended on the Martin work. The defendant affirmatively alleged that Salonis performed certain work upon the Martin project but that, in spite of numerous requests by the defendant to Salonis to furnish an itemized list of material and labor expended in the performance of the additional Martin work, Salonis had failed to provide the defendant with any data upon which the reasonable value of said work and materials could be ascertained.

The evidence of Salonis at trial was that the defendant's representatives verbally requested him to perform the three items of additional masonry work, told him to keep track of his time and materials, and promised that he would be paid for the work. Salonis testified that he computed the cost for the Martin portion of the work which, including overhead and a 10-percent profit, totaled $8,356, and that he orally reported that amount to the defendant's project supervisor. Salonis admitted that he had never submitted written claims for any part of the extra work and materials and conceded that he had not submitted time cards nor material invoices for the Martin work, nor responded to the requests for that information, except to tell the defendant that he had already given him all the information he had as he did not keep explicit records of equipment and materials used.

The defendant's evidence supported the allegations of its answer and indicated that the defendant had not requested the additional work except for the Martin portion of it, and that the other additional work was in connection with the principal contract.

The case was pleaded and tried by both parties as a single cause of action on the basic written sub-

contract. Although the facts were pleaded and the evidence tended to establish that some oral modifications of the written contract might have been made, neither party specifically pleaded modification of the written contract nor waiver of any of its provisions, nor did the plaintiff plead or set out any separate cause of action for quantum meruit.

At the conclusion of the plaintiff's evidence, the plaintiff moved to amend its petition to allege that the defendant's conduct in requesting additional work and agreeing to pay for it waived the requirement of written change orders and the requirement that claims for adjustment of the subcontract price must be made in writing within 10 days from the date such changes were ordered. The plaintiff's motion to amend also included a request to amend the petition by setting out a separate alternative count on the basis of quantum meruit for the additional work. The defendant objected on the ground that there was no evidence to support a modification or waiver of the written contract and that it was too late. The court concluded that the proposed amendments injected additional issues into the case and denied the motion.

The defendant proceeded with the introduction of its evidence and, at the close of all the evidence, the proposed jury instructions were presented to counsel for both parties before submission of the cause. Instruction No. 6 instructed the jury that the plaintiff could satisfy its burden of proof by proving performance and compliance with the terms and conditions of the written subcontract or, in the alternative, that the parties to the contract could avoid the provisions of the written contract by such words, acts, or conduct from which the jury might find that the parties waived, modified, rescinded, abrogated, or abandoned the provisions of the contract. The instruction also authorized the jury to return a verdict for the plaintiff if the jury found that plaintiff had proven

either of the alternatives by a preponderance of the evidence. The defendant objected to the instruction.

Thereafter counsel proceeded to argue the case to the jury and plaintiff's counsel strenuously argued that the amounts claimed for the additional work performed constituted a fair and reasonable price for the work done. As a result of the argument, the court determined it necessary to add to the proposed instructions instruction No. 7A which instructed the jury that the question of whether Salonis did or did not perform certain additional labor and furnish additional materials and whether or not any claim or request for payment was for a price that was fair and reasonable was not pertinent and should not be considered. Neither counsel objected to instruction No. 7A. Instruction No. 6 and instruction No. 7A were both given to the jury. The jury returned a verdict for the plaintiff in the amount of $15,079.11.

The defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The District Court sustained the motion for a new trial and the plaintiff has appealed.

Where a party has sustained the burden and expense of a trial and has succeeded in securing the verdict of a jury on the facts in issue, he has the right to keep the benefit of that verdict unless there is prejudicial error in the proceeding in which it was secured. *Fellows v. Buffalo County,* 181 Neb. 269, 147 N.W.2d 801 (1967).

The standard of judicial review of a trial court's order granting a new trial is whether or not the trial court abused its discretion. By its terms, this discretion is necessarily broader than a narrowly isolated and rigid examination of the merits of each alleged error in the record. A combination of errors, for example, each of which, in itself, might not be grounds for granting a new trial, may result in a finding by the trial judge that justice will be served by retrying the issues in the case. This court will

not ordinarily disturb a trial court's order granting a new trial, and will not disturb it at all unless it clearly appears that no tenable grounds existed therefor. *County of Hall ex rel. Wisely v. McDermott,* 204 Neb. 589, 284 N.W.2d 287 (1979).

In the present case, the confusion in the pleading and trial of the issues is apparent. Plaintiff did not plead that any specific provision of the written contract had been modified or waived, nor did he plead quantum meruit as an alternative cause of action, but rested his claim on the written contract. Defendant also failed to plead what specific portions of the written agreement were modified or waived as to the Martin work, or whether that work was under a separate and distinct contract.

Plaintiff relies upon the established rule in this state that the parties to a construction contract which requires written change orders may avoid such provisions where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of the provisions, or the party claiming the benefit of the provisions is estopped to rely upon them. *Griffin v. Geneva Industries, Inc.,* 193 Neb. 694, 228 N.W.2d 880 (1975).

We have very recently held that, where the parties ignore provisions in a written contract requiring change orders to be in writing, it will not furnish a defense to a claim for compensation for the additional work performed. *D. K. Meyer Corp. v. Bevco, Inc., ante* p. 318, 292 N.W.2d 773 (1980).

An extensive annotation in 2 A.L.R.3d 620 (1965), covers a great many cases dealing with the effect of stipulations in a construction contract that alterations or extras must be ordered in writing. The many factual variations which may constitute modifications or waivers of provisions of the written contract or instead constitute a new and valid contract independent from the original contract serve to emphasize the importance of pleading and proof of a

specific cause of action, or of separate and distinct causes of action.

We have consistently held that a party will not be permitted to plead one cause of action and upon trial rely on proof establishing another. In order that a recovery may be had in an action, the pleadings and the proof must agree. Consequently, a plaintiff may not plead a cause of action on an express agreement and then, over objection, prove and recover on a cause of quantum meruit. *Lincoln Service & Supply, Inc. v. Lorenzen,* 171 Neb. 671, 107 N.W.2d 333 (1961).

Ample tenable grounds existed for the trial court's order granting a new trial and the court did not abuse its discretion.

AFFIRMED.