WHEAT BELT PUBLIC POWER DISTRICT, APPELLEE, V. NEAL BATTERMAN, APPELLANT.

452 N.W.2d 49

Filed March 2, 1990.   No. 88-414.

Robert R. Gibson, of Professional Legal Associates of Nebraska, P.C., for appellant.

Thomas M. Sonntag, of John Peetz, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

Defendant, Neal Batterman, appeals from the district court's judgment in favor of plaintiff-appellee, Wheat Belt Public Power District, a municipal corporation. Batterman's assignments of error merge to claim the district court erred in holding him to the terms of certain contracts he entered into with Wheat Belt. We affirm.

It is undisputed that Batterman and Wheat Belt entered into 10 contracts between 1972 and 1979, each establishing a new account in Batterman's name, under which Batterman agreed

in his own name to pay Wheat Belt for electricity the latter agreed to provide in order to power irrigation wells located on various tracts of land Batterman then owned. Each contract save one designated Batterman as owner of the land described therein; the one designated Batterman as "customer." Each contract contains the following or similar provision: "This Contract shall become effective upon execution and shall continue in force for a primary term of <u>five</u> years . . . and thereafter from year to year until cancelled by written notice from the Owner to the District . . . ." None of the contracts had expired or were ever canceled, nor had any of the accounts been transferred to any other person or entity. Merle Bobo, customer service supervisor for Wheat Belt, further stated that none of the contracts had ever been amended.

In 1979, Batterman transferred the land to which the contracts pertain to Batterman & Sons, Ltd., a corporation he formed. Batterman testified that he did not notify Wheat Belt he had transferred the land to his corporation, but claimed that the transfer was common knowledge in the community and that maybe one or more members of Wheat Belt's board of directors was aware of the transfer. However, Bobo stated that he did not become aware of the transfer until the year of the trial. Batterman acknowledged that no new written contracts were drafted or entered into between his corporation and Wheat Belt and that the electricity to run the irrigation wells on the land was provided under the "same old contract."

According to Batterman, after the transfer of the land to his corporation and until 1984, the corporation paid for the electricity used with checks written on the corporate banking account. Such checks were accepted and cashed by Wheat Belt.

In 1984, Batterman was unable, for financial reasons, to farm the land in question and thus leased it to Ted Chickos. Batterman notified Wheat Belt that Chickos would be farming the land during that year and would pay for the electricity used. Bobo testified he informed Batterman that he, Batterman, would remain responsible for electricity charges accrued pursuant to the contracts. Batterman did not remember Bobo informing him that he would remain responsible for the charges, but acknowledged that Bobo never advised him Wheat

Belt would release him from his contract obligation.

During 1984, Wheat Belt provided electricity to each of the 10 accounts pursuant to the contracts between it and Batterman. Although Chickos paid the initial 1984 hookup charge, he did not pay for the electricity used during that year, and Wheat Belt billed Batterman.

Batterman first claims that the original contracts between him and Wheat Belt were modified to substitute the corporation as the owner of the land, thus making the corporation the party obligated for the 1984 electricity charges. This modification, he argues, occurred through a course of dealing between the parties. "Wheatbelt's acceptance of payments over five years from the actual owner of the land, Batterman & Sons, Ltd., denotes acceptance or acquiescence in the substitution of the new land owner for the previous owner, Neal Batterman." Brief for appellant at 6.

The applicable rule, however, is that the liability of one party to a contract may not be substituted for the liability of another unless the parties to the original contract agree to the discharge of the original debtor and substitution of a new one. As stated in *Thomas v. George*, 105 Neb. 51, 58, 181 N.W. 646, 648-49 (1921), *modifying* 105 Neb. 44, 178 N.W. 922 (1920):

> A novation will never be presumed. The complete discharge of the original debtor must be shown to have been expressly agreed upon, or must be necessarily and clearly inferred from the express terms of the agreement. An agreement, in order to result in a novation, must contain two stipulations: One, to completely extinguish an existing liability, and the other, to substitute a new one in its place. Before the original debtor will be discharged and another party substituted in his place, the burden is upon the original debtor to show, just as in proving any other contract, that such was intended, not only by him, but also by the creditor and by the party to be substituted.

See, also, *Kearney State Bank & Trust v. Scheer-Williams*, 229 Neb. 705, 428 N.W.2d 888 (1988) (a novation occurs when the existing liability of a party to an agreement is completely extinguished and a new one is substituted in its place according to the terms of a new agreement). Accord, *Chadron Energy*

*Corp. v. First Nat. Bank*, 221 Neb. 590, 379 N.W.2d 742 (1986); *First West Side Bank v. Herzog*, 204 Neb. 356, 282 N.W.2d 38 (1979).

Regardless of Batterman's possible intentions, the record supplies no evidence that Wheat Belt intended that the corporation be substituted in Batterman's stead as the party obligated upon the 10 contracts. The evidence instead is that the contracts between Wheat Belt and Batterman were never modified, that the contracts were never terminated, and that no new contracts were entered into between Wheat Belt and the corporation. The fact that Wheat Belt accepted payment from the corporation for electricity charges incurred by Batterman is not sufficient to show that Wheat Belt consented to the substitution of the corporation as the party obligated upon the contracts. See, *Davenport v. Dickson*, 211 Kan. 306, 507 P.2d 301 (1973) (creditor's assent to hold new debtor liable for obligation of original debtor is ineffective to constitute novation unless there is assent to give up original debtor); *D. A. Taylor Co. v. Paulson*, 552 P.2d 1274 (Utah 1976).

Any claim Batterman makes that Wheat Belt, because of its acceptance of the checks from the corporation, is estopped from denying that the corporation was substituted as the debtor on the contracts or has waived its right to payment from Batterman for the electricity used must also fail. The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. *Reifschneider v. Nebraska Methodist Hosp.*, 233 Neb. 695, 447

N.W.2d 622 (1989). Wheat Belt's acceptance of payments from the corporation was not sufficient to constitute a representation to Batterman that he was no longer obligated on the contracts.

Batterman's reliance on *Shreves v. D. R. Anderson Constructors, Inc.*, 206 Neb. 433, 293 N.W.2d 106 (1980), and *Pearce v. ELIC Corp.*, 213 Neb. 193, 329 N.W.2d 74 (1982), to argue the contrary position is misplaced. In *Shreves*, we reiterated the rule that the parties to a construction contract which requires written change orders may avoid such provisions where their words, acts, or conduct amount to a waiver, modification, rescission, abrogation, or abandonment of the provisions, or the party claiming the benefit of the provisions is estopped to rely upon them. Here, we are not dealing with such a provision.

Neither is *Pearce*, which deals not with estoppel, but with waiver, apposite. Therein, we considered whether, in an action by an employee against his successor employer, the successor employer waived a condition precedent of "Overwrite Quota" in its commission agreement with the employee. We stated the rule that a written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive. Waiver is a voluntary and intentional relinquishment or abandonment of a known existing legal right or such conduct as warrants an inference of the relinquishment of such right. *Jelsma v. Scottsdale Ins. Co.*, 231 Neb. 657, 437 N.W.2d 778 (1989). In order to establish a waiver of a legal right, there must be clear, unequivocal, and decisive action of a party showing such a purpose, or acts amounting to estoppel on his part. *Id.* Again, Wheat Belt's acceptance of the payments from the corporation was not a "clear, unequivocal, and decisive action" reflecting an intent to discharge Batterman from liability on the contracts.

Batterman further asserts that if the above arguments are unavailing, then it must be concluded that Wheat Belt and his corporation entered into a new oral contract under which the corporation was obligated for the 1984 electricity charges. In this regard, Batterman urges that the obligation for the

electricity "runs with the land" because the contracts provide that the indebtedness arising under their provisions shall be considered a lien or mortgage against the land. We, however, need not, and therefore do not, concern ourselves with whether those provisions obligate a subsequent purchaser of land to pay for electricity charges incurred by a prior owner, for even if so, they do not excuse Batterman from the personal obligations arising under the other provisions of the contracts. See *Dupuy v. Western State Bank*, 221 Neb. 230, 375 N.W.2d 909 (1985) (lien on property as security for payment of debt is right afforded by law to have obligation satisfied out of particular property, thereby providing supplemental remedy for collection of debt).

Finally, Batterman claims that according to the terms of the contracts, the "owner" is the party obligated and that his corporation, not he, is the owner of the land. Batterman's premise as to the party obligated by the contracts is incorrect. Each contract, except the one in which Batterman is designated "customer," states that it is "made and entered into . . . by and between Wheatbelt Public Power District, hereinafter referred to as the District, and Neal Batterman, hereinafter referred to as the Owner." The contracts, except the one, further state in this or similar language that "the District hereby agrees to make electric energy available to the Owner and the Owner hereby agrees to purchase and does purchase, according to the terms and conditions set out below, electric energy for use on the following described premises . . . ." It is clear that Batterman is the party obligated upon the contracts. Batterman is merely designated "owner" for the sake of convenience, and, indeed, at the time of contracting, he was the owner of the subject premises. The contracts do not state that Batterman's obligation will terminate when he no longer owns the premises, nor do they state that Wheat Belt agrees to accept by novation the obligation of any new owner of the subject premises. Instead, the contracts provide that they will continue in effect "until cancelled by written notice from the Owner to the District." Batterman provided no such notice and thus remained obligated upon the contracts for the electricity provided during 1984.

The one contract which refers to Batterman as "customer" states: "The Customer will, when electric energy becomes available, purchase from the District all electric energy used on the premises described below and will pay therefore monthly at rates to be determined . . . ." Clearly, Batterman is the party obligated under this contract as well.

There being no merit to any of the arguments made in support of Batterman's summarized assignment of error, the judgment of the district court is affirmed.

AFFIRMED.