JOHN MARTIN, GUARDIAN, ET AL., APPELLANTS, V. C. FRANK REAVIS ET AL., APPELLEES.

FILED JUNE 15, 1928. No. 25957.

*Adams & Zimmerman* and *Herman Ginsburg*, for appellants.

*F. B. Baylor, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON, EBERLY and HOWELL, JJ., and REDICK, District Judge.

GOOD, J.

This is an action to recover from defendants, who are attorneys at law, $1,666.66, which it is alleged belongs to plaintiffs and is wrongfully withheld by defendants; also to recover, as a penalty, thrice the amount retained, on the theory that it was procured by deceit practiced by the defendants. Defendants admit the retention of the $1,666.66; assert that it was due them as attorney's fees under a written contract of employment as attorneys for plaintiffs, and deny that any deceit was practiced. On a trial of the issues, after all the testimony was taken, a verdict was directed for defendants. Plaintiffs have appealed.

From the record it appears that Mary Barrett, a maiden lady, possessing an estate of approximately $100,000, died testate, leaving her surviving, as her next of kin and heirs at law, a number of sisters and brothers and children of deceased sisters and brothers. In her will she made 13 specific bequests, aggregating $14,050. One clause of the will bequeathed a legacy of $5,000 to Elizabeth Cunningham, a sister of testatrix. There was a residuary clause in which she bequeathed and devised the residue and remainder of her estate to her brother, William Barrett, upon the condition that he should pay all the other bequests and legacies provided for in the will. The latter part of this clause is, in part, as follows: "It is my will and intention and I do hereby direct that the said William Barrett, to whom I give my entire estate, both real and personal property, subject, however, to the payment of all the specific bequests and legacies mentioned in my will." The sister, Mrs. Cunningham, predeceased the testatrix.

Shortly after the death of Miss Barrett, her next of kin and heirs, other than her brother William, employed defendants to resist the probate of the will of Mary Barrett. At the time of the employment the defendants were informed that William Barrett claimed that he did not have to pay the $5,000 bequest to Mrs. Cunningham. After some conversation and preliminary investigation, a written contract of employment was entered into. The contract was dictated by Mr. Beghtol to the firm's stenographer in the presence of a number of the interested parties, after which the contract, or copies thereof, were signed by the various parties. The contract provided:

"Whereas, the undersigned are heirs of Mary Barrett, deceased, and desire to employ the firm of Reavis & Beghtol as their attorneys to represent the undersigned in litigation arising out of a proposed contest of the will of said Mary Barrett.

"Now, therefore, it is agreed that said Reavis & Beghtol will act as attorneys for the undersigned in all matters arising out of the will of Mary Barrett deceased in what-

ever court or courts the same may be brought and shall receive as their only compensation therefor an amount equal to thirty-three and one-third per cent. of the property or money realized by the undersigned from the estate of the said Mary Barrett, it being understood that said attorneys are not to compromise said suit without the consent of the undersigned."

Pursuant to this employment, the defendants prepared and filed objections to the probate of Miss Barrett's will. A hearing was had in the county court, resulting in the overruling of the objections and admitting the will to probate. Contestants appealed to the district court, where defendants conducted the trial, lasting about a week, which resulted in a judgment sustaining the will. Thereupon, the defendants, after further consultation with their clients, instituted in the federal court an action on behalf of the children of Mrs. Cunningham for the construction of the will, whereby it was hoped to obtain a decree, holding that the clause in the will devising the residue of Mary Barrett's estate to William Barrett, upon the condition that he pay the specific bequests in the will, would be held a condition precedent to the vesting of title in him; that, on account of the death of Mrs. Cunningham, a payment of the legacy could not be made to her and the condition precedent could not be performed; that the residuary devise and bequest to William would lapse and would be disposed of as though testatrix had died intestate; and with a view to obtain the Cunningham legacy for plaintiffs.

Defendants in the action in the federal court, who were the executors of the will of Mary Barrett, filed a motion to dismiss the action which, under the federal practice, amounted to a demurrer to the petition. In other words, the filing of such motion was the equivalent of saying that the facts therein alleged were insufficient to entitle the plaintiffs to any relief. Necessarily, this implied that the plaintiffs were not entitled to the legacy which had been bequeathed to their mother, Elizabeth Cunningham. The federal court overruled the demurrer, and immediately

thereafter the executors paid to Reavis & Beghtol, as attorneys for the Cunningham heirs, plaintiffs in this action, $5,000, the amount of the legacy left to Elizabeth Cunningham. Defendants in this action immediately wrote letters to their clients, informing them of the receipt of the $5,000 and making a statement as to the amount to which each was entitled after deducting one-third thereof for attorney's fees and some small items of expense, and enclosed checks for the respective amounts. These checks were recived by the plaintiffs and cashed, and they retained the proceeds without objection. Several months later, the federal court decided that the payment of the Cunningham legacy was not a condition precedent to the vesting of the residuary estate in William Barrett. It then became apparent that plaintiffs could receive nothing further from the estate of Mary Barrett, and this action was begun.

Plaintiffs contend that the written contract is ambiguous and that they were entitled to introduce oral testimony to explain what was meant by its terms, asserting that they were intended to and did mean that defendants in this action were to receive a sum equal to one-third of the amount which they should recover by the litigation over and above the legacy to Elizabeth Cunningham.

We think this contention is not well-founded. A careful examination of the contract makes it apparent that its terms are clear, easily understood and are not ambiguous. The contract provided in unequivocal terms, which any ordinary person could understand, that defendants in this action were to receive for their legal services one-third of the amount which plaintiffs might realize out of the estate of Mary Barrett. In this action no reformation of the contract is sought, and, had it been, the evidence is insufficient to sustain such a contention.

In *Clark v. Hall*, 54 Neb. 479, it is held: "Where a written contract is the basis of an action and neither party asks for a reformation thereof, it is the duty of the court to ascertain its meaning and enforce it accordingly." And in *Western Mfg. Co. v. Rogers*, 54 Neb. 456, it is held: "The

interpretation of a written contract is for the court and not for the jury, when it is capable of being construed by its terms alone, unaided by extrinsic facts." Like rulings are made in *Ricketts v. Rogers,* 53 Neb. 477, and *Meyer v. Shamp,* 51 Neb. 424. Moreover, in the present action the plaintiffs, themselves, pleaded the contract in their petition and, in the absence of any demand for reformation, are bound by the terms of the contract as pleaded. *Carey v. Zabel,* 112 Neb. 16.

Under the rules thus announced, the contract itself being unambiguous, it follows that its construction and legal effect was a question for the court and not for the jury.

Plaintiffs further contend that both parties to the contract of employment understood it to mean that counsel were to receive only one-third of what was secured by defeating the probate of the will, or, at least, that this was the understanding of the plaintiffs in this action; that defendants knew that plaintiffs so understood the contract, and that therefore this interpretation should be placed upon the contract.

There is no evidence to sustain this contention. After the terms of the contract were dictated, it was read over and there was no discussion of its terms or the meaning thereof; nor was there, at any subsequent time, any such discussion between the parties to the contract. In this connection, it is also significant that, after the will contest had been finally disposed of in the district court, and plaintiffs and their counsel, defendants in this action, had concluded to abide by that decision, the action in federal court was begun without any other agreement or understanding as to attorney's fees. It seems quite clear that plaintiffs and defendants relied upon and understood that the written contract still covered and fixed the terms of employment for that litigation; and yet, if the contention now made by plaintiffs is true, there could have been no compensation to the attorneys for the services to be rendered in the federal court. There is no basis for the contention that both parties to the contract understood it to have the

meaning contended for by plaintiffs. The evidence discloses that the defendants in this action rendered extensive legal services for the plaintiffs; that, by the written contract entered into, they were entitled to the amount which they retained for legal services. This disposes of the first cause of action.

The second cause of action is grounded on the assumption that the amount retained by defendants as counsel fees was procured by deceit, and that plaintiffs are entitled to recover thrice the amount as a penalty, pursuant to the provisions of section 265, Comp. St. 1922. The record does not disclose that defendants were guilty of any fraud or deceit or of any unprofessional conduct, and is absolutely barren of any fact which would support the second cause of action.

On the record made, there was nothing to submit to the jury. The trial court properly directed a verdict for the defendants. The record is free from error, and the judgment is

AFFIRMED.