FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF LINCOLN, A
UNITED STATES CORPORATION, APPELLEE, V. KENNETH L. AND
ELAINE R. THOMAS, APPELLANTS, GORDON SCHROLL, DOING
BUSINESS AS GORDON'S SERVICE CENTER, ET AL., APPELLEES.

432 N.W.2d 222

Filed December 2, 1988.   No. 86-727.

John S. Mingus, of Mingus & Mingus, for appellants.

R. Kent Radke, of Badami & Radke, for appellee First
Federal Savings and Loan.

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and MORAN and
BROWER, D. JJ.

GRANT, J.

This is an appeal from a judgment of the district court for
Howard County foreclosing a real estate mortgage.

In December of 1979, the defendants-appellants, Kenneth L.
and Elaine R. Thomas, mortgagors, delivered to First Federal
Savings and Loan Association of Lincoln, plaintiff-appellee,
mortgagee, a real estate mortgage on property located in
Howard County. The land was described by metes and bounds.
The Thomases made payments on the $40,000 promissory note
secured by this mortgage until their default in April of 1983.

On December 24, 1985, First Federal filed a petition to
foreclose the mortgage. A copy of the mortgage, as filed in the
office of the register of deeds of Howard County, was attached
to the petition. First Federal alleged that "through inadvertence
and omission" the description in the mortgage, as filed, was in
error in that one line was omitted. The description in the

original mortgage was:

> A tract of land in the Northeast Quarter (NE¼) of Section 20, Township 13 North, Range 12, West of the 6th P.M., more accurately described as follows: Commencing at the Northeast corner of said section 20, thence in a Southerly direction on the East line of said Section 20 on a bearing of S 00 17' E a distance of Three Hundred Ninety feet (390') thence in a Westerly direction on a bearing of S 89°41' W a distance of 41.77 feet to a point on the West Right-of-Way line of a County Road, the point of beginning, thence in a Southerly direction along said County Road Right-of-Way line on a bearing of S 09°20' 09" W a distance of 29.1 feet, thence in a Southwesterly direction along said County Road Right-of-Way line on a bearing of S 27°52'29" a distance of 432.71 feet, thence in a Westerly direction parallel to the North line of said Section on a bearing of S 89° 41' W a distance of Four Hundred Ten Feet (410') thence in an Easterly direction on a bearing of N 89°41' E a distance of 1075.23 feet to the point of beginning and containing 9/18 acres more or less, Howard County, Nebraska.

Plaintiff's petition alleged that the above description was in error in that in the fourth line from the end of the description, immediately after the phrase "89° 41' W a distance of" the phrase, "Eight Hundred Sixty-six and Forty-two Hundredths (866.42) feet; thence in a Northerly direction on a bearing of N 0°17" W, a distance of," was inadvertently omitted by the scrivener. As filed, the mortgage sets out that the south line of the property is determined by going 410 feet west, then 1,075.23 feet east "to the point of beginning." This obviously means that never the twain shall meet.

It is clear that the description in the filed mortgage does not describe a closed parcel of land. It is also clear what plaintiff alleged was omitted. What is not clear is what, if any, facts indicate the precise direction and distance omitted.

The mortgage is on a preprinted form, and, because the description is lengthy, the portion not fitting in the appropriate space on the first page was added as "Exhibit 'A' " typed on a separate piece of paper attached to the signature page. It is the

portion of the description found on the separate piece of paper attached to the signature page where First Federal alleges a line of the description was left out due to a scrivener's error.

In its petition, First Federal set out the erroneous description, in the mortgage as filed, and the alleged correct description, and alleged that "these facts were known to the parties at the time the mortgage was signed," and stated that "the Plaintiff shall correct instantor [sic] the legal description . . . ." The prayer of the petition did not seek reformation of the instrument, but merely announced that the plaintiff was going to, apparently unilaterally, correct the problem.

The Thomases filed a general demurrer, which was overruled by the trial court. The Thomases were given 14 days thereafter to answer. No answer was ever filed.

First Federal filed a motion for summary judgment, with attached exhibits, on April 9, 1986. On May 28, 1986, the district court rendered its order denying First Federal's motion for summary judgment and setting the matter for trial on July 31.

On July 31, 1986, a trial was held before the district court. The district court noted the appearance of plaintiff and its attorney and the defendants Thomases' attorney. The court orally found that the Thomases "have neither pled further; nor answered the petition of the plaintiff, and Mr. Shaughnessy [plaintiff's counsel], is it the desire that the Court find the Thomases in default at this time?" Counsel responded, "Yes." Thomases' counsel then stated, "I thought an answer had been filed. Evidently no answer has been filed here. Response of trial setting, there'd be a general denial, if allowed to file one and a reiteration of the demurrer."

Although the court then orally stated, "For the record, default judgment is entered against defendants, Kenneth L. and Elaine R. Thomas; said parties having failed to answer," the court's subsequent conduct shows that the court did not dispose of Thomases' interests by default judgment. The case, in effect, just proceeded to trial.

The trial began over Thomases' counsel's objections. At this time, neither defendant Howard County nor the holder of a small second lien had been advised of the trial. Each had filed

an answer. The interests of Howard County were not mentioned in the decree later entered. When the hearing began with plaintiff's first witness, Thomases' counsel inquired if he would be able to make objections, and the trial court allowed Thomases' counsel to participate.

Plaintiff's counsel offered the testimony of one witness, a vice president of plaintiff, and four exhibits. Thomases' counsel had no objection to the testimony or any of the exhibits. The testimony established the note, Thomases' failure to pay, and an amount due. The four exhibits were (1) the mortgage note; (2) the filed mortgage, with the erroneous description, which described a geometrically open area; (3) Thomases' answers to plaintiff's request for admissions, which admitted the execution of the note and their failure to pay, but denied that Thomases had executed a mortgage with the alleged proper description; and (4) Thomases' answers to plaintiff's interrogatories, in which Thomases set out generally in denying that they had executed a mortgage on the alleged properly described property, they found it "difficult to preceive [sic] in light of the foregoing exactly to which description the plaintiff has referenced was clear and known by it which would seem to be pertinent in the premises."

The witness was excused. Plaintiff's attorney then requested that, as part of the decree, "the legal description be conformed correctly and that the decree set out the correct legal description." Plaintiff then rested. The court then said, "Mr. Mingus [Thomases' counsel]?" Thomases' counsel then stated, "It's the same situation. In the pleadings, they never came in and asked for reformation of the instrument. . . . They offer no proof. They are just simply saying, 'Your Honor, we want it from this description to this description' . . . ."

The court then stated, "The Court's going to enter judgment in foreclosure in favor of the plaintiff . . . ." In its decree, the court stated that the judgment was a first lien upon property described in the fashion said to be correct in plaintiff's petition. No findings were made as to any reformation.

The Thomases assign five errors, which, as argued in their brief, may be summarized as errors in the trial court's actions (1) in not sustaining the Thomases' demurrer, since First

Federal had neither asked for nor pled sufficient facts for reformation, and (2) in entering a default judgment against the Thomases when the Thomases had filed a demurrer and had resisted First Federal's motion for summary judgment.

Proceedings to foreclose a real estate mortgage and to reform a written instrument are equity actions. *First Fed. Sav. & Loan Assn. v. Cal-Neb Land Co.*, 219 Neb. 887, 367 N.W.2d 136 (1985); *Newton v. Brown*, 222 Neb. 605, 386 N.W.2d 424 (1986). On appeal to the Supreme Court, an equity action is reviewed de novo on the record, requiring this court to reach a conclusion independent of the findings of the trial court but subject to the rule that, where credible evidence is in conflict on material issues of fact, the Supreme Court will consider the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Newton v. Brown, supra.*

This case has come to this court on the petition of First Federal. This petition was generally demurred to by the Thomases, and this demurrer was overruled. No answer was filed, but at the trial, handled on a default basis, evidence was adduced by plaintiff that Thomases had not signed any mortgage except one with, in effect, no description of land.

We recognize that the reformation of a mortgage to correct a mutual mistake is incidental to the foreclosure of a mortgage and any and all equitable rights the mortgagee can show he has in it. *Gurske v. Strate*, 165 Neb. 882, 87 N.W.2d 703 (1958). We also recognize that a court may, although not requested by either party, reform an instrument to the ascertained intentions of the parties. See, *Plummer v. Fie*, 167 Neb. 367, 93 N.W.2d 26 (1958); *Clark v. Hall*, 54 Neb. 479, 74 N.W. 856 (1898); *Martin v. Reavis*, 117 Neb. 219, 220 N.W. 238 (1928).

The difficulty in this case is that we cannot ascertain the intention of the parties. The petition seems to allege there has been a mutual mistake. While plaintiff did not specifically pray for reformation, its petition did pray "for such other and further relief as equity may require." Such a prayer seeks any relief that an equity court may grant, which relief would included reformation. *Rodgers v. Jorgensen*, 159 Neb. 485, 67 N.W.2d 770 (1954).

We have held that a party seeking reformation on a claim of

mutual mistake must, by clear and convincing evidence, prove the existence of the mistake with reference to the instrument. *Newton v. Brown, supra.* There is no evidence on the question of mistake, beyond the fact that the mortgage description is meaningless. The mortgage with the improper, open-ended description is in evidence, as are Thomases' denials that they signed any other mortgage, but there was no evidence before the court to support reformation in the manner in which plaintiff submitted the description to the court.

Adding to the confusion is the concluding language of the mortgage itself. That language sets out, after reciting the erroneous description, the phrase, "containing $9/18$ acres more or less." That language is not in the petitioner's proposed description at any point, but is before us in the language of the mortgage itself. Aside from wondering why "$9/18$" is not reduced to "$1/2$," rough calculations of an area which measures approximately 1,075 feet on its northern boundary, 866 feet on its southern boundary, 410 feet on its western boundary, and 462 feet on its eastern boundary (which is the general area described in the description which plaintiff alleges is correct) show that the tract allegedly mortgaged contains approximately 398,000 square feet. Since there are 43,560 square feet in an acre, it is clear that the area described in plaintiff's alleged proper description contains slightly more than 9 acres. That amount, while certainly more than the "$9/18$ acres more or less," is not sufficiently close in size to enable a finder of fact to determine any description of the property involved from the language itself.

The evidence before the trial court, and this court, is not sufficient to establish any reformation of the instrument before us. The judgment in favor of plaintiff is reversed and the cause dismissed.

REVERSED AND DISMISSED.