WILLIS CADWELL, APPELLEE, v. MARGARET C. SMITH ET AL.,
APPELLANTS.

FILED FEBRUARY 20, 1909.    No. 15,446.

1. **Vendor and Purchaser:** CONTRACT: CONSTRUCTION.  The parties to
a contract for the sale of real estate stipulated that the balance
of the consideration should be paid by a day named, in default
of which the vendee was to forfeit his interest in the land.  *Held,*
That this provision manifested an intention to make time of
the essence of the contract.

2. **Contracts:** WAIVER.  Where both parties to a contract fail to per-
form their mutual covenants on the day named, they will be held
to have waived its strict performance as to time, but the con-
tract will remain unimpaired as to its effect.

3. ———: FORFEITURE.  One party to a contract cannot declare a for-
feture for failure of the other party to strictly perform its
conditions, unless he is in position to perform on his part.

APPEAL from the district court for Custer county:
BRUNO O. HOSTETLER, JUDGE.  *Affirmed.*

*Sullivan & Squires,* for appellants.

*N. T. Gadd, C. L. Gutterson* and *Flansburg & Williams,*
contra.

DUFFIE, C.

On June 10, 1905, the parties to this action executed
the following written contract: "For and in considera-
tion of the sum of one hundred dollars to me in hand
paid, I hereby give Willis Cadwell, of Broken Bow, the
right to sell my farm, to wit, the west half of the north-
west quarter and the southwest quarter of section fifteen,
and the north half of the northwest quarter of section
twenty-two, all in township seventeen north, range nine-
teen west 6th P. M., Custer county, Nebraska, for the
sum of five thousand dollars, net, to me, as follows, to
wit: One hundred dollars in hand paid, the receipt of
which is hereby acknowledged.  The sum of four hun-
dred dollars June 12, 1905, the sum of thirty-five hundred

dollars January 1, 1906, without interest.   The purchaser to assume a certain mortgage for the sum of one thousand dollars, with interest at nine per cent. from the 1st day of March, 1905, the purchaser to receive one-third of all crops raised during the season of 1905.   Possession to be given January 1, 1906, at time final payment is made on purchase price.   All improvements including buildings, fences, windmill, tower, tanks, all loose lumber, posts, or other material to remain on place, abstract to be furnished showing land to be clear of all incumbrance except said mortgage for the sum of one thousand dollars, and taxes up to and including the year 1904 paid.   M. C. & S. P. Smith, M. C. Smith.   Witness to signature of S. P. Smith: J. G. Painter."

Cadwell paid to the Smiths $100 on the date of the contract, and $400 on June 12, 1905, as by the contract required.   June 2, 1906, at the request of the Smiths, a further contract was executed by the parties, as follows: "The deed and abstract herewith affecting the W. $\frac{1}{2}$ N. W. $\frac{1}{4}$, the S. W. $\frac{1}{4}$, sec. 15, and N. $\frac{1}{2}$ N. W. $\frac{1}{4}$, sec. 22, all in twp. 17-19, is held in escrow on following conditions, to wit: Whereas, Willis Cadwell, party of the first part, has purchased the above described property from Margaret C. and S. P. Smith for the sum of $5,000, and there remains due said Margaret C. and S. P. Smith the sum of three thousand no-100 dollars; now, therefore, if said Willis Cadwell shall well and truly pay to said M. C. and S. P. Smith the said sum of three thousand and no-100 dollars with interest at six per cent. on the 1st day of September, 1906, then the deed and abstract is to be delivered to said Cadwell.   Provided, should said Cadwell fail to pay said sum and interest for thirty days after due, then and in that event the deed and abstract shall be delivered to said M. C. and S. P. Smith, and any interest said Cadwell may have acquired by reason of any moneys paid shall be forfeited to said M. C. and S. P. Smith.   Dated this 2d day of January, A. D. 1906.   Willis Cadwell, M. C. Smith, S. P. Smith."

While the agreement of June 10, 1905, is on its face more in the nature of an option than a contract of sale, it would seem from the evidence that the construction put upon it by the parties was that it operated as a sale of the land to the plaintiff. Both the plaintiff and defendants testified that rent was paid to the plaintiff for the use of the premises during the season of 1905, which would indicate that Cadwell was given possession of the land, and that defendants occupied the same as his tenants. In explanation of the contract made January 2, 1906, the plaintiff testified that the contract of June, 1905, was not carried out by him and the balance of the purchase price of the land paid, for the reason that during the latter part of 1905 Smith had several talks with him concerning their deal and was undecided whether he would stay in Custer county, move back to Missouri, or go to South Dakota; and, owing to the fact that there was a second mortgage for $800 on the land, which he would have to pay out of the balance of the money due January 1, 1906, he desired to change the contract, taking only $500 in cash, instead of the $3,500 due, and to lease the land for another year, allowing the $3,000 then remaining unpaid to run until the 1st of September, 1906. The impression which we get from the plaintiff's testimony, which is not disputed upon this point, is that Smith's wife, who held the legal title, desired to realize $3,000 in cash from the land, and that her husband should remain upon it as tenant until they accumulated sufficient to discharge the second mortgage of $800. Plaintiff complied with this request, the contract of January 2, 1906, was executed, the deed of the land placed in escrow to be held by the Broken Bow State Bank, and a lease running to Smith for 1906 executed and delivered. Some time after the middle of September, 1906, the plaintiff went with other parties to the state of Texas, and on the 27th of September wrote to S. P. Smith that one of the party had been taken sick at San Antonio, on account of which he had to leave another man with him and proceed alone

to other points in the state; that he would be unable to return to Broken Bow before some time in the succeeding week, at which time he would pay the balance due on the land, as well as any extra interest which Smith should incur by reason of the delay; that if this was not satisfactory to write him at a named point in Kansas, or to wire him as the case might require. This letter was not received by Smith until the 1st day of October, and after banking hours on that date he called on the bank for the surrender of the deed, and on the plaintiff's return home on the 6th or 7th of October, defendants refused to carry out the contract and make a conveyance. Plaintiff thereupon brought this action to enforce specific performance of the contract. From a decree in favor of the plaintiff, defendants have appealed.

The defendants insist that time was of the essence of the contract, and that payment of the $3,000 not being made or tendered on the 1st day of October, 1906, they had a right under the contract to declare the same at an end and to be relieved of any further obligations thereunder. The second contract required Cadwell to pay $3,000 on or before October 1, 1906, and provided for a forfeiture of his interest in the land in case of his default. This provision, we think, must be construed as making time of the essence of the contract. *White v. Atlas Lumber Co.,* 49 Neb. 82. That time may be made of the essence of a contract by stipulation of parties to that effect is not to be questioned. *Morgan v. Bergen,* 3 Neb. 209; *Jewett v. Black,* 60 Neb. 173.

It is equally well settled that a party to such a contract, who is himself in default, is not entitled to the aid of a court of equity to enforce the contract against a party who was ready and willing to perform according to the terms of the agreement. The record makes it clear that the plaintiff did not tender performance on his part on the 1st of October, 1906, and, unless there are circumstances attending the case which take it out of the general rule, the court cannot afford him any relief. On the

other hand, if the defendants were themselves in default, if they were not in position to perform on their part, equity will not allow them to declare a forfeiture and to take the benefit of the payments made them by the plaintiff. "As a general rule, a contract cannot be determined or rescinded by a party to it for nonperformance of the other party, unless the former is in a position to demand a specific performance." *Hale v. Cravener,* 128 Ill. 408. Where both parties fail to perform their mutual covenants on the day named, they will be held to have waived strict performance of the contract as to time, though it will be unimpaired as to its effect. *Van Campen v. Knight,* 63 Barb. (N. Y.) 205. As we have seen, both parties construed the contract of June 10 as one of sale, and that contract provides that the defendants shall furnish an abstract showing the land clear of all incumbrances except the $1,000 mortgage, the payment of which the plaintiff assumed.

It is insisted by the defendants that after the January contract was executed an abstract of the land was examined by the plaintiff, and by agreement of the parties it was provided that the abstract should remain in the hands of the abstracter until the land was paid for, at which time it should be delivered to the plaintiff. We do not think that this claim is supported by the evidence. One Leonard, who prepared the abstract, testified that Cadwell and Smith came to his office about the time the second contract was made; that Cadwell took and examined the abstract, then handed it to Smith, "and said something about wanting an extension of it, and they said they would just leave it there." This evidence falls far short of establishing an agreement upon the part of the plaintiff to leave the abstract in the hands of Leonard until after the last payment was made. On the contrary, it shows that the plaintiff desired to have the abstract extended, and this could not be done to show an unincumbered title in Mrs. Smith (excepting the $1,000 mortgage)

until payment of the second mortgage for $800 and a release thereof.

It is true that Smith testified that it was the understanding that the $800 mortgage was to be paid out of the $3,000 which plaintiff was to pay on October 1. This mortgage was given to the president of the Broken Bow State Bank, who resided in the state of Illinois, and the evidence shows that at Smith's request the cashier of the bank had procured a release of the mortgage from the president, and had it in his possession ready for filing when the mortgage was paid. The plaintiff denies that he had any knowledge that a release had been secured from the mortgagee, or that there was any agreement with Smith that it should be paid from the $3,000 due from him under the contract. On the contrary, his testimony shows that the defendants desired to save intact the $3,000 due from him, and pay the $800 mortgage from moneys derived from other sources. The plaintiff was not required to pay the $3,000 due October 1, 1906, nor any part thereof, until the defendants were prepared to convey a title wholly unincumbered, except by the $1,000 mortgage which he had assumed. Until the defendants were so prepared, the plaintiff was not in default. One party to a contract cannot declare a forfeiture for failure of the other party to strictly perform its conditions, unless he is in position to himself meet the conditions required on his part. He cannot penalize the other party while himself unable to perform. It is quite evident that the district court found that the defendants were not themselves in position to carry out this contract on the 1st of October, when the money from the plaintiff was due, and that upon that ground he entered a decree in favor of the plaintiff.

A careful examination of the evidence satisfies us that the finding of the district court is fully supported by the evidence, that his decree is right, and that the judgment appealed from should be affirmed.

EPPERSON and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.