T. J. PLUMMER, APPELLEE, V. JEROME S. FIE, APPELLANT.

93 N. W. 2d 26

Filed November 21, 1958. No. 34432.

*Kenneth S. Gotobed* and *J. Karr Taylor,* for appellant.

*Baskins & Baskins,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiff, T. J. Plummer, brought this action at law against defendant, Jerome S. Fie, seeking to recover $1,000 and interest thereon, same being a down payment made to defendant by plaintiff for the purchase of real property under a written contract dated May 29, 1954. Defendant allegedly failed, refused, and was unable to perform the contract, and thereafter, upon demand, refused and failed to return the down payment to plaintiff. A copy of said contract, marked exhibit A, was attached to and made a part of plaintiff's petition.

Defendant's answer admitted that he entered into such a written contract with plaintiff on the date alleged; that plaintiff individually paid the $1,000 to defendant; and that plaintiff and defendant were the sole and only parties who signed the contract. However, defendant denied that exhibit A was a true copy there-

of because description of the land therein did not clearly represent the intent of the parties. Defendant's answer admitted that the balance of $4,500 was to be paid by plaintiff when defendant furnished satisfactory title, but denied generally and alleged that he did furnish satisfactory title and tendered a deed to plaintiff but plaintiff wrongfully refused to accept same or perform the contract, whereupon defendant terminated same, and plaintiff forfeited the down payment as liquidated damages. For a so-called counter-claim, defendant alleged that plaintiff's wrongful refusal and resulting delay caused defendant additional stated damages and expenses. Thus he prayed that plaintiff recover nothing and that defendant be awarded a judgment for $1,180 or in the alternative that he be authorized to retain the $1,000 down payment and recover judgment for $180. Plaintiff's reply was a general denial.

After a hearing by the court, a jury having been waived by agreement of the parties, a judgment was rendered on November 27, 1957, which dismissed defendant's cross-petition and found and adjudged the issues generally in favor of plaintiff and against defendant. It awarded plaintiff a judgment for $1,000 with interest at 6 percent from the date of the judgment despite a specific finding that demand was made by plaintiff's attorneys upon defendant for return of said $1,000 down payment on September 30, 1954, which demand was refused. Thereupon defendant filed a motion for new trial, assigning as far as important here that the judgment was not sustained by sufficient evidence, and was contrary to law. Plaintiff also filed a motion for new trial, assigning that the trial court erred in rendering judgment for interest from date of the judgment, November 27, 1957, instead of from September 30, 1954, the date of demand and refusal.

After hearing upon said motions for new trial, and during the same term, the court first considered plaintiff's motion, and in disposing of same found and ad-

judged that the judgment of November 27, 1957, should remain as rendered except that same should be and was modified to permit plaintiff to recover $1,000 plus interest thereon of $188.50, same being from September 30, 1954, to November 27, 1957, date of the original judgment, which made the total judgment $1,188.50 with interest at 6 percent from November 27, 1957. No contention is made here that the trial court erred in so doing if plaintiff was entitled to recover.

Defendant's motion was taken under advisement, and thereafter overruled, whereupon he appealed, assigning and arguing in substance that the judgment was not sustained by sufficient evidence and was contrary to law. We do not sustain the assignment.

At the outset, defendant argued that: "This is a case in equity triable de novo." He admitted that plaintiff's action was to recover at law, but claimed that defendant's answer, having alleged "that the legal description in said contract did not correctly represent the intent of the parties," required reformation of the contract in equity without asking for it, and the parties, having tried it as in equity, converted the action to one in equity, triable here de novo. We do not agree. Both parties simply prayed for a money judgment. There was no matter presented by the pleadings, or relief sought therein, requiring or justifying trial of the issues in any manner other or different than was appropriate in an action at law. The parties evidently so recognized that fact when a jury was waived by agreement and same was tried by the court as a law action.

In that connection, as concluded in Garbark v. Newman, 155 Neb. 188, 51 N. W. 2d 315, and held as recently as Gurske v. Strate, 165 Neb. 882, 87 N. W. 2d 703: "It is unnecessary to secure a formal reformation of a written instrument where it differs from the true agreement of the parties as it should have been expressed in the writing in order to enforce it or have the advantage of it as a defense."

.

Also, as held in Clark v. Hall, 54 Neb. 479, 74 N. W. 856, and approved in Martin v. Reavis, 117 Neb. 219, 220 N. W. 238: "Where a written contract is the basis of an action and neither party asks for a reformation thereof, it is the duty of the court to ascertain its meaning and enforce it accordingly."

In Hile v. Troupe, 84 Neb. 266, 121 N. W. 109, this court said, quoting authorities: "Forfeitures are not looked upon with favor by the courts, and will not be created by intendment, nor enforced unless the court is compelled upon the facts and law to do so."

In Cadwell v. Smith, 83 Neb. 567, 120 N. W. 130, and approved in Oman v. City of Wayne, 152 Neb. 341, 40 N. W. 2d 916, the court said: "One party to a contract cannot declare a forfeiture for failure of the other party to strictly perform its conditions, unless he is in position to perform on his part."

Also, having concluded that this was an action at law, we apply the elementary rules reaffirmed in Lewis v. Hiskey, 166 Neb. 402, 89 N. W. 2d 132, that: "The findings of a court in a law action in which a jury is waived have the effect of a verdict of a jury and will not be disturbed on appeal unless clearly wrong.

"In such a case, it is not within the province of this court to resolve conflicts or to weigh evidence. If there is a conflict in the evidence this court in reviewing the judgment rendered will presume that controverted facts were decided by the trial court in favor of the successful party and the findings will not be disturbed unless clearly wrong."

In the light of the foregoing rules, we have examined the rather voluminous record, which as summarized discloses the following pertinent facts: On the evening of May 29, 1954, about 8 p. m., plaintiff, one Wayne Elliott, defendant, and defendant's agent, one Worden, who was engaged in the insurance, real estate, and loan business in Ogallala and had a mortgage of about $4,500 on de-

fendant's property, met by prearrangement in Worden's office.

Elliott, a contractor and builder, had previously contacted defendant about buying a tract of land purportedly belonging to defendant south of U. S. Highway No. 30 in Ogallala on which to construct a motel, but Elliott had no money. Defendant had moved from Ogallala to Gibbon and wanted to sell the property and get out from under his obligations to Worden. He had previously sold his property north of U. S. Highway No. 30 to Elliott's father-in-law, and owned only some platted property south of that highway which is here directly involved. Finally plaintiff offered to furnish Elliott the money to buy the property if it would be deeded in plaintiff's name as security. Plaintiff and Elliott had talked about forming a partnership in the motel business, but they had never agreed to do so, and contrary to defendant's contention, they were not partners.

When the parties met as aforesaid in Worden's office, they agreed upon a price of $5,500, with $1,000 as a down payment. The balance was to be paid when defendant furnished a warranty deed, abstract of title had been examined, and title proven to be satisfactory. It was understood by the parties that the purchase was for property supposedly owned by defendant south of U. S. Highway No. 30, and the parties then had a plat or copy of a plat thereof before them, depicting a survey which defendant had the county engineer make and which had been recorded August 19, 1950. There plaintiff pointed out on the plat showing the foot frontage intended to be purchased south of U. S. Highway No. 30, and upon inquiry defendant said that was correct as far as he knew.

There Worden, as directed, prepared the contract in typed and printed form, naming defendant as seller and plaintiff and Wayne Elliott as buyers, but admittedly only plaintiff and defendant ever signed the contract, and plaintiff individually paid the $1,000 down to be

held by Worden pending performance of the contract provisions. The hour was late, Worden's secretary was not present, and the legal description of the property was long and too complicated for the ordinary person to understand, so it was agreed that Worden could put the description in the contract the next morning, which was done by using the deed defendant had originally received and the mortgage Worden held, which mistakenly included all property supposedly owned by defendant both north and south of U. S. Highway No. 30.

Plaintiff was given a copy of the contract, and on June 3, 1954, Worden wrote plaintiff a letter stating that the abstract had been extended to date and suggested that plaintiff call at his office and take it to whomever he wished to examine it. Plaintiff did so, and took the plat, abstract, and contract to a lawyer in Ogallala for examination. A few days later the lawyer reported to plaintiff that the title was a mess; that the abstract and contract did not anywhere near fit each other; and that the contract included considerable land that defendant did not own and should not have been in the contract. As soon as they were able to determine the particular tract agreed to be purchased by plaintiff, which defendant supposedly owned south of U. S. Highway No. 30, plaintiff was informed by his lawyer that a quitclaim deed would have to be obtained for a portion of such tract which defendant did not own. Plaintiff then took the papers back to Worden, who gave plaintiff his check for $1,000, dated June 15, 1954, in order to return the down payment.

In that connection, Worden told plaintiff that if he didn't take the land, he would buy it for the same price. Worden, having notified defendant of the necessity for a quitclaim deed, it was decided that Worden should obtain one which plaintiff's lawyer had prepared, so plaintiff got the papers back from Worden, returned the $1,000 check to Worden, and returned the papers to plaintiff's lawyer. However, Worden was busy with

other matters and did not obtain the quitclaim deed after some lapse of time. The party from whom the quitclaim deed was required was a distrustful 90-year-old gentleman who was represented by another lawyer in Ogallala. In that situation, plaintiff and Elliott consulted with that lawyer, and Elliott paid him to prepare and obtain a quitclaim deed with defendant as grantee therein. That was done, and the deed was given to plaintiff, who that day or the next turned it over to Elliott, who retained it, and plaintiff never had possession of it again.

After said deed had been obtained, plaintiff's lawyer informed him that the state highway department claimed part of the tract of land, and advised a survey of the land. Thus the county surveyor went out to do so, and found that part of the land was in the highway, and part in a road and on land owned and leased by the Union Pacific Railroad Company. Elliott then consulted the district highway engineer who produced a plat, exhibit D, and claimed that the state owned the land shown upon it. Elliott then borrowed that plat, showed it to plaintiff, and they decided they didn't want the land under such circumstances.

Thereupon, plaintiff took the papers back to Worden who gave plaintiff back the same check for $1,000. However, after they discussed the situation, Worden informed plaintiff that under such circumstances he didn't want the land either, and feared for his own security on his loan, whereupon he told plaintiff that he was going to stop payment on the $1,000 check, and he did so.

Defendant, having received word from Worden that the papers had been returned another time, came back to Ogallala but on the way stopped at North Platte and consulted with the district highway engineer, where he was informed of the claims made by the state highway department. Thereafter a meeting was held between plaintiff, Elliott, and defendant in the office of plaintiff's lawyer. There defendant offered to give plaintiff

back his $1,000 if he would give defendant the quitclaim deed which plaintiff did not possess, and Elliott, upon demand, refused to give it to defendant. Later he told defendant that, having spent time and money to obtain it, he was going to return it to grantor, whereupon defendant, who never at any time ever tendered a deed to plaintiff, said with an oath that he had the $1,000 and he was going to keep it.

In that connection, it is interesting to note that defendant had already obtained a quitclaim deed of his own which was duly recorded to the same property contained in the quitclaim deed then possessed by Elliott. Also, afterward defendant had the land surveyed and then sold that which he actually owned south of U. S. Highway No. 30 to another party for $7,250 cash by warranty deed, which had attached thereto and made a part thereof the plat so made by defendant's surveyor. Worden's mortgage was then paid. In the meantime, the last of September 1954, plaintiff's attorneys demanded return of the $1,000 down payment made by plaintiff, which was refused.

In the light of such evidence and authorities heretofore cited, we conclude that the judgment of the trial court was amply supported by the evidence and was not contrary to law. Therefore, the judgment should be and same hereby is affirmed. All costs are taxed to defendant.

AFFIRMED.