KENDALL PERRY AND KELLAN PERRY, APPELLEES, V. DENNIS L.
ESCH AND JOHN RAYNOR, APPELLANTS.

481 N.W.2d 431

Filed March 20, 1992.   No. S-89-740.

Patrick M. Heng, of Raynor, Rensch, Heng & Wills, for appellants.

Richard K. Watts, of Mills, Mills and Papik, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendants, Dennis L. Esch and John Raynor, appeal an order of the district court for Polk County, Nebraska, in a declaratory judgment action filed by plaintiffs-appellees, Kendall Perry and Kellan Perry, brothers. The trial court determined that an "Option To Purchase Real Estate" remained in full force and effect, although plaintiffs had not paid the real estate taxes as required by the contract, and that defendants were "equitably estopped from terminating the option contract of August 1, 1987."

Defendants timely appealed and in this court assign five errors. The first two may be summarized into one: that the trial court erred in holding that defendants were equitably estopped from terminating the option agreement and that the contract remained in full force and effect. The other three assignments need not be discussed for the following reasons: One of them is based on the allegation that the trial court erred "in finding that the Appellants waived their right to terminate the Option Agreement," and the trial court made no such finding. The other two alleged errors are not discussed in defendants' brief

and will not be considered by this court. See *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). In consideration of the assignment before us, we affirm.

The record shows the following: In 1985, defendants and a third party, Jon Rose, purchased the real estate in question, a quarter section of land located in Polk County, Nebraska. The land was titled in the two defendants and Rose, but the record does not show how the three took title or the respective interests of the three. Negotiations for the sale of the land to plaintiffs began in 1987, between plaintiffs as potential buyers and the three owners of the land as sellers. Early in the negotiations, it became clear that the sellers were not interested in a land contract because of their concerns about the farm economy and the difficulties which could result if the buyers were forced into bankruptcy proceedings.

Accordingly, all parties agreed to go forward by way of an option agreement to purchase the land. Early in the negotiations, all the parties apparently agreed upon an effective total price of $124,000 (consisting of an initial option payment of $21,000, with a purchase price of $103,000). At this point the three sellers, the two defendants and Jon Rose, were in agreement on the terms of the proposed option agreement. Plaintiffs then discovered that, because of defendant Raynor's unavailability, the three potential sellers had failed to qualify for certain federal farm subsidy programs. Plaintiffs then demanded a price reduction, apparently equivalent to the lost subsidies. At this point, Jon Rose determined the reduced offer was not acceptable to him, and he refused to sell. After Rose's withdrawal, defendants obviously did not have complete title to the land but continued to negotiate with plaintiffs for the ultimate sale of the quarter section.

On August 13, 1987, plaintiffs as "Buyer" and defendants as "Seller" executed the option agreement. The agreement gave "the exclusive option to purchase the real property of Seller . . . described as follows: . . . ." At this point, defendants could sell their interest in the land, but they did not have the right to sell the described property in its entirety. In the agreement, defendants did agree that "[w]ithin sixty (60) days from the execution of this agreement, Sellers shall acquire the interest of

Jon Rose in the described premises in order that unencumbered title may be transferred to Buyers."

The option agreement also contained a provision in which defendants stated that there were "two (2) existing mortgages against the property." Each mortgage was in the amount of $115,000, and each was granted to a separate, identified Iowa bank. Defendants agreed to have one of the mortgages released within 30 days of the agreement and also agreed that if "one of the mortgages . . . is not completely released of record by Sept. 1, 1987, then this option shall become null and void" and plaintiffs' moneys returned.

Plaintiffs' obligations to get this "exclusive option" included payment to defendants of the option price of $16,500 in three installments of $5,500 by December 31, 1987. The purchase price was $103,000, to be paid within 60 days of the exercise of the option. The option had to be exercised by January 30, 1988, but could be extended until September 15, 1988, if notice of extension was given during the "primary period" (ending January 30, 1988) and payment of $10,025 made by September 1, 1988. Six additional 1-year extensions of the option could be obtained by plaintiffs in a similar manner. The option would terminate on September 15, 1994, if not exercised.

It was further agreed that plaintiffs would pay the 1987 and later taxes and that if such taxes were not paid "within thirty (30) days after the same shall become delinquent," the option would terminate. The agreement also provided that "[a]ny notice hereunder shall be given, in writing, to the party for whom it is intended" at specified addresses.

On approximately December 10, 1987, a notice of the 1987 real estate taxes was sent by the Polk County treasurer to Rose. Rose did not forward this notice to plaintiffs or to defendants. The taxes were not paid as required by the agreement.

On January 12, 1988, the plaintiffs gave timely written notice to defendants that they intended to extend the option beyond the original term. As provided in the agreement, plaintiffs were obligated to pay defendants $10,025 on or before September 1, 1988, to obtain the extension. On August 2, 1988, plaintiff Kendall Perry contacted defendant Raynor by telephone, inquiring about the option payment. The exact time and length

(9 minutes) of this call were established by Perry's telephone bill. Kendall Perry testified that he had misplaced his copy of the agreement during a move and was calling to determine when the option payment was due. He testified that Raynor stated the payment was due August 1.

Raynor admitted the August 2 phone call, but testified that Kendall Perry had called to inquire whether any payments were due at that time. Raynor responded that none were due, to his knowledge. Raynor testified that he recalled making this statement, because he already had the payment checks while talking on the phone with Kendall Perry. The two checks for $5,000 each were drawn on an FmHA account, bore an FmHA endorsement, and were dated August 2, 1988. The funds were received and retained by defendants.

Approximately a week or 10 days later, Raynor received a call from Rose, who stated that he had just received a delinquency notice regarding taxes on the Polk County property. Defendants discussed the matter between themselves and with Rose. On August 15, 1988, defendants notified Kendall Perry, in writing, that the option would be terminated because the real estate taxes for the first half of 1987 had not been paid within the time provided in the agreement. On August 23, they sent a copy of the August 15 letter to Kellan Perry. Defendants retained the $10,000.

On August 31, 1988, the plaintiffs commenced this action and simultaneously tendered to defendants, by depositing with the clerk of the Polk County District Court, $1,555.52 (representing payment of the one-half of the real estate taxes delinquent on May 1, 1988, and the other one-half of the taxes that would become delinquent on September 1, 1988). Plaintiffs also paid into the court the $25 which was the remaining amount due on the option payment of $10,025, due September 1, 1988.

On September 15, 1988, plaintiffs notified defendants, in writing, that plaintiffs intended to exercise their right to purchase the land, pursuant to the contract. Defendants refused to honor this notification.

On March 10, 1989, the declaratory judgment action came for trial before the court. After trial, the court entered an order

finding that Raynor's statements in the phone conversation of August 2, 1988, amounted to a false representation or concealment of material facts, in that Raynor did not tell plaintiffs that the taxes were not paid. The court ordered that appellants were "equitably estopped from terminating the option contract of August 1, 1987," and that "the contract of August 1, 1987 is in full force and effect."

On appeal, defendants seek to have the declaratory judgment reversed by this court, with directions on remand to enter judgment in defendants' favor. This court stated in *Union Ins. Co. v. Bailey*, 234 Neb. 257, 260, 450 N.W.2d 661, 664 (1990):

"An action for declaratory judgment under the provisions of Neb. Rev. Stat. §§ 25-21,149 et seq. (Reissue 1985) is sui generis [citations omitted]; whether such an action is to be treated as one at law or one in equity is to be determined by the nature of the dispute [citations omitted]. The essence of the dispute before us sounds in contract. That being so, the action is to be treated as one at law."

Similarly, in the case before us, the essence of this dispute sounds in contract, since an option is a form of contract. See *In re Estate of Michels*, 223 Neb. 286, 389 N.W.2d 285 (1986). The relief sought by plaintiffs and the remedy fashioned by the trial court have overtones of equity, since the court, to maintain the status quo, found that defendants were equitably estopped from terminating the option agreement. Nonetheless, we shall review this case as a law action—the determination of rights under a contract.

In reviewing a judgment in an action at law tried to the court, we do not reweigh the evidence, but consider it in the light most favorable to the successful party and resolve conflicts in favor of the successful party. *Union Ins. Co. v. Bailey, supra.*

As stated above, defendants' two operative assignments of error may, for purposes of our review, be consolidated. Defendants contend that plaintiffs did not prove each element of equitable estoppel sufficiently to have that doctrine imposed, or, in their words, "there is an absolute failure of evidence to establish" misrepresentation or concealment. Brief

for appellants at 10. Defendants' contentions are without merit.

No dispute exists as to the existence of a valid contract, nor is the enforceability of the contract questioned. Both parties agree that plaintiffs did not pay the taxes in a timely fashion, as required by the contract, and therefore, no dispute exists as to whether there was a breach. The issue before the trial court, then, was whether defendants were estopped by their conduct from enforcing plaintiffs' breach.

At trial, plaintiffs asserted, among other theories, that their breach was excused by equitable estoppel. To impose equitable estoppel the court must find

> as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. [Citation omitted.]

*Wheat Belt Pub. Power Dist. v. Batterman*, 234 Neb. 589, 593, 452 N.W.2d 49, 52 (1990).

Plaintiffs argue that defendants are equitably estopped because of defendants' concealing the fact that taxes were due. Plaintiffs assert that this concealment took place during the phone conversation of August 2. On August 2, the taxes were already delinquent. Though Raynor's statement was a misrepresentation, the fact that it was made at a time when the taxes were already overdue according to the contract prevents us from agreeing with the trial court in finding plaintiffs' breach in this regard was based on defendant Raynor's statement.

There are other adequate bases, however, for the trial court's determinations that the contract remained in full force and effect and that, therefore, defendants did not have the right to terminate the contract.

The operative effect of the entire option agreement in question is controlled by a single provision in the agreement: defendants' obligation to perform their promise to "[w]ithin sixty (60) days from the execution of this agreement . . . acquire the interest of Jon Rose in the described premises . . . ." Without that performance, plaintiffs' rights under the option agreement did not give plaintiffs the right to obtain the title to the land, but amounted only to the right to sue defendants for breach of contract in failing to acquire that which plaintiffs wanted to purchase. The facts as to whether defendants had obtained Rose's interest by October 12, 1987, as required by the contract, were peculiarly within the knowledge of Rose and defendants. No doubt, plaintiffs acted naively in not pursuing the question as to whether defendants had performed their obligation to obtain complete title. Conduct of defendants, however, in accepting a $5,500 option payment in December 1987 (more than 2 months after the time in which defendants were to have acquired Rose's interest) and in accepting a $10,000 payment in August 1988 for an extension of the option resulted in a reasonable belief in plaintiffs that all was going well. Plaintiffs had been permitted to enter on the land and they had farmed the land. Without Rose's permission, plaintiffs were not much more than trespassers as to Rose's interest in the land. In acting as they did, obviously plaintiffs relied on defendants' promise that Rose's interest would be obtained by defendants in such time that they could farm the land without incurring any liability to Rose.

Obviously, Rose is entitled to compensation for the use of his interest in the land. What is to be that compensation and who is to pay it? Confusion reigns—and the resolution of that confusion can rest only with defendants. If defendants could not obtain Rose's interest, as they promised to do, there was no need to prolong this charade. The parties should then proceed directly to the calculation of damages for defendants' breach of the option agreement, which breach, in effect, destroyed the

rights of plaintiffs and, as stated above, changed an alleged option agreement to a right to sue defendants for damages.

Defendants' insistence that they may retain plaintiffs' payments and terminate plaintiffs' contractual rights because of plaintiffs' failure to timely pay the first one-half of the 1987 taxes flies in the face of established Nebraska law. This court stated in *Cadwell v. Smith*, 83 Neb. 567, 572, 120 N.W. 130, 132 (1909): "One party to a contract cannot declare a forfeiture for failure of the other party to strictly perform its conditions, unless he is in position to himself meet the conditions required on his part. He cannot penalize the other party while himself unable to perform." *Cadwell* was approved in *Oman v. City of Wayne*, 152 Neb. 341, 347-48, 40 N.W.2d 916, 920 (1950), where we stated, "One party to a contract cannot declare a forfeiture for failure of the other party to strictly perform its conditions, unless he is in position to perform on his part." Both *Cadwell* and *Oman* were approved in *Plummer v. Fie*, 167 Neb. 367, 93 N.W.2d 26 (1958).

The record does not set out whether defendants have complied with their specific agreement to remove one of the two existing mortgages on the property, but it is undisputed that defendants have not complied with their obligation to acquire Rose's interest. Defendants have no right to forfeiture of any of plaintiffs' payments or rights under the option agreement. The trial court was correct in holding that defendants could not unilaterally terminate the option contract and therefore in ordering that defendants were estopped from so doing and that the contract was in effect.

AFFIRMED.