Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/06/2022 09:09 AM CDT

Noah's Ark Processors, LLC, a Minnesota limited
liability company, appellant, v. UniFirst
Corporation, a Massachusetts
corporation, appellee.

___ N.W.2d ___

Filed February 11, 2022.    No. S-21-086.

1. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

2. **Arbitration and Award: Judgments: Appeal and Error.** Whether a stay of proceedings should be granted and arbitration required is a question of law. When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court.

3. **Equity: Appeal and Error.** In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.

4. **Trial: Evidence: Appeal and Error.** A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion.

5. **Rules of Evidence: Hearsay: Appeal and Error.** Apart from rulings under the residual hearsay exception, an appellate court reviews for clear error the factual findings underpinning a trial court's hearsay ruling and reviews de novo the court's ultimate determination to admit evidence over a hearsay objection or exclude evidence on hearsay grounds.

6. **Evidence: Appeal and Error.** In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party.

7. **Estoppel.** To impose equitable estoppel, the court must find as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.

8. **Appeal and Error.** An appellate court will not consider an argument or theory that is raised for the first time on appeal.

9. **Trial: Evidence: Presumptions.** In a bench trial, the court is presumed to have considered only competent and relevant evidence in making its decision.

10. **Judgments: Words and Phrases: Appeal and Error.** An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

Appeal from the District Court for Douglas County: Gregory M. Schatz, Judge. Affirmed.

W. Patrick Betterman, P.C., L.L.O., for appellant.

Max Kelch and Matt Davis for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Funke, J.

Noah's Ark Processors, LLC (Noah's), notified UniFirst Corporation (UniFirst) that it was terminating their business agreement. Pursuant to an arbitration clause, UniFirst

commenced an arbitration proceeding against Noah's seeking damages. Noah's sought a declaration in district court that because Noah's was not a signatory to the agreement, Noah's was not bound by the agreement or the arbitration provision. Following a bench trial, the court dismissed the complaint of Noah's, determined that Noah's was equitably estopped from contesting that it is bound by the agreement and arbitration provision, and directed Noah's to participate in arbitration.

Noah's appeals. The appeal is without merit. We affirm.

BACKGROUND

UniFirst, a Massachusetts corporation, is a supplier of industrial worker uniforms. Nebraska Prime Group LLC (Prime) is a Nebraska limited liability company, which operated a meatpacking business in Hastings, Nebraska. In 2013, UniFirst and Prime entered into a customer service agreement (CSA), under which UniFirst agreed to provide uniforms and related services for Prime's meatpacking business. The initial term of the CSA was 60 months, through April 2018, and then on a month-to-month basis thereafter. The CSA included separate line items with pricing and stated, "The Customer orders from [UniFirst] for all of Customer's requirements for garments and other items ('Merchandise') of the type listed on the reverse, at the prices and upon the terms and conditions outlined. Additional Merchandise requested by Customer, verbally or in writing, will also be covered by this Agreement." The CSA required arbitration for "[a]ll disputes of whatever kind between Customer and UniFirst." The CSA stated, "Customer agrees that in the event it sells or transfers its business, it will require the purchaser or transferee to assume all obligations and responsibilities under this Agreement."

Noah's is a Minnesota limited liability company doing business in Omaha, Nebraska. In 2014, through foreclosure of a lien, Noah's acquired Prime's assets, including the meatpacking operation. Prime continued its operations at the plant until January 1, 2015. On January 2, Noah's took possession

of the property and began operating the plant and assets for its own account. UniFirst continued to provide services to the plant under the CSA, until January 2018, when Noah's issued a termination letter.

In June 2018, UniFirst filed an arbitration demand against Noah's, seeking $141,054.01 in damages and requesting that the arbitration occur in Topeka, Kansas. In September, Noah's filed a complaint in the district court for Douglas County, Nebraska, seeking a declaration that the CSA is not binding against it and a determination of any balance due to UniFirst under an oral arrangement. UniFirst filed an answer denying the allegations and asserting affirmative defenses that (1) Noah's ratified the CSA, (2) Noah's continued Prime's operation of the plant business and utilization of services under the CSA, and (3) Noah's was estopped from denying the existence of a valid contract.

Noah's moved for summary judgment, arguing that it was not bound by the CSA or, in the alternative, that UniFirst had waived its right to arbitration. The court granted the motion of Noah's with respect to UniFirst's ratification and successor liability affirmative defenses, but denied the motion as to the equitable estoppel affirmative defense, finding genuine issues of material fact.

Although acknowledging that Noah's was not a signatory to the CSA, the court found UniFirst had presented evidence from which a jury could conclude that the conduct of Noah's "on several instances" amounted to false representations, concealment of material facts, or representations calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which Noah's subsequently attempted to assert. The court found no merit to the argument of Noah's that an equitable estoppel defense requires a party to prove the elements of fraud and deception. The court found no merit to the argument of Noah's that UniFirst had waived its right to arbitration. The court found UniFirst had acted consistently with its arbitration right and found no evidence of any prejudice to Noah's.

The court held a bench trial in October 2020. In its post-trial order, the court found that UniFirst had established the elements for its equitable estoppel claim, and the court again found no evidence of a waiver. The court found no merit to the argument of Noah's that UniFirst had failed to plead its estoppel theory, explaining UniFirst had asserted equitable estoppel as an affirmative defense in answers to the first and second amended complaint of Noah's.

In analyzing the elements of equitable estoppel based upon the trial evidence, the court found:

When [Noah's] took over operation of the plant on or about January 2, 2015, neither [Noah's] nor Prime notified [UniFirst] that [Noah's] had assumed operation of the plant, and [UniFirst] believed it was continuing to do business with Prime. There is no evidence that [UniFirst] entered into any oral agreement with [Noah's] at any time before the [CSA] was terminated by [Noah's]. [UniFirst] was not aware that [Noah's] existed, and [Noah's] did nothing to give notice to [UniFirst] as to the change in the ownership of the plant in January, 2015.

The court found that after Noah's acquired the plant, management at the plant did not change, which meant that UniFirst's contacts at the plant were the same as under Prime—at the same business phone numbers and email addresses. The court found that in a phone call with UniFirst in 2016, a plant employee had referred to the business as "WR Reserve" and assured that WR Reserve and Prime were the same entity. In addition, the court found that from August 2017 to January 2018, UniFirst submitted "233 invoices . . . to 'Nebraska Prime'" for services provided under the CSA. The court found as follows: All of the invoices were paid on a regular basis; UniFirst was never advised the invoices were incorrectly titled; and at the time the CSA was terminated, there was an outstanding balance due to UniFirst.

The record showed that because the original term of the CSA would expire in 2018, UniFirst proposed a new contract

in September 2017 with the entity referred to as "Nebraska Prime/WR Reserve" and was not advised that the proposed contract named an incorrect entity. In a followup conversation, Noah's acknowledged to UniFirst that the current CSA would remain effective for 2 years.

There were several occasions between 2015 and 2018 wherein UniFirst requested and received performance evaluations from the company named "Nebraska Prime," and UniFirst was not notified of the incorrect name for the company. Lastly, the court found when Noah's terminated the CSA, it sought to do so for cause based upon several CSA provisions, which the court found was an acknowledgment by Noah's that it believed it was bound by the CSA.

Regarding UniFirst's equitable estoppel claim, the court ultimately found that the conduct of Noah's amounted to a false representation or concealment of the fact that it had become UniFirst's customer under the CSA, with the expectation that UniFirst would rely on the misrepresentation, that UniFirst was unaware Noah's had become its customer under the CSA, and that UniFirst had relied in good faith, to its detriment, on the conduct of Noah's. The court found that in reliance on the CSA, UniFirst continued to invest in the operation of Noah's by taking new orders and adding a new service route. The court therefore concluded that UniFirst had established the essential elements of equitable estoppel and that Noah's was estopped from denying the binding authority of the CSA. The court lifted a stipulated stay of the arbitration proceedings and directed Noah's to participate in arbitration.

Noah's moved to alter or amend, arguing, inter alia, the court's estoppel ruling did not address the question of whether the parties' billing disputes over certain items were within the scope of the CSA's arbitration provision. Noah's argued that its alleged liability was for certain garments not included within the CSA and was an issue for the court to decide and not the arbitrator. The court summarily overruled the motion to alter or amend.

Noah's appeals. We moved the case to our docket upon our own motion.

## ASSIGNMENTS OF ERROR

Noah's assigns, summarized and restated, that the district court erred in (1) finding that Noah's was equitably estopped from disputing that it is bound by the CSA and arbitration provision; (2) failing to find part of the parties' billing dispute to be outside the scope of the arbitration agreement; (3) failing to determine the amounts owed to UniFirst for garments, if any; (4) deciding the issue of equitable estoppel when it was not pled; and (5) admitting hearsay evidence.

[1] The brief of Noah's included further assignments of error. However, at oral argument, Noah's agreed that these assignments of error were based on dictum in the trial court's order and that it is not necessary to address that aspect of the appeal to fully resolve this case. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[1]

## STANDARD OF REVIEW

[2] Whether a stay of proceedings should be granted and arbitration required is a question of law.[2] When reviewing questions of law, this court has an obligation to resolve the questions independently of the conclusion reached by the trial court.[3]

[3] In an appeal of an equity action, this court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, we consider and may give weight to the fact that the trial

---

[1] *Amend v. Nebraska Pub. Serv. Comm.*, 298 Neb. 617, 905 N.W.2d 551 (2018).

[2] *Good Samaritan Coffee Co. v. LaRue Distributing*, 275 Neb. 674, 748 N.W.2d 367 (2008).

[3] *Id.*

judge heard and observed the witnesses and accepted one ver-
sion of the facts rather than another.[4]

[4-6] A trial court has the discretion to determine the rele-
vancy and admissibility of evidence, and such determinations
will not be disturbed on appeal unless they constitute an abuse
of that discretion.[5] Apart from rulings under the residual hear-
say exception, an appellate court reviews for clear error the
factual findings underpinning a trial court's hearsay ruling and
reviews de novo the court's ultimate determination to admit
evidence over a hearsay objection or exclude evidence on
hearsay grounds.[6] In a civil case, the admission or exclusion of
evidence is not reversible error unless it unfairly prejudiced a
substantial right of the complaining party.[7]

## ANALYSIS

### Equitable Estoppel

[7] Noah's argues that UniFirst failed to establish its equita-
ble estoppel claim due to a lack of proof that UniFirst relied on
the statements or conduct of Noah's or that Noah's deceived
UniFirst. To impose equitable estoppel, the court must find as
to the party estopped, (1) conduct which amounts to a false
representation or concealment of material facts or, at least,
which is calculated to convey the impression that the facts are
otherwise than, and inconsistent with, those which the party
subsequently attempts to assert; (2) the intention, or at least
the expectation, that such conduct shall be acted upon by, or
influence, the other party or other persons; (3) knowledge,
actual or constructive, of the real facts; as to the other party,

---

[4] *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577
(1991). See, *Omaha Police Union Local 101 v. City of Omaha*, 292 Neb.
381, 872 N.W.2d 765 (2015); *Rauscher v. City of Lincoln*, 269 Neb. 267,
691 N.W.2d 844 (2005); *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d
522 (2002).

[5] *VKGS v. Planet Bingo*, 309 Neb. 950, 962 N.W.2d 909 (2021).

[6] *Id*.

[7] *Id*.

(4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice.[8]

Noah's contends there is no evidence in the record that it had knowledge of the CSA or that Noah's did anything to convey the impression that it was bound by the CSA, thereby forgoing its right to a jury trial. However, as the fact finder and judge of the weight and the credibility to be afforded to witness testimony, the court issued detailed findings in its posttrial decision which refute the arguments of Noah's.

The court drew upon several different sources of evidence from the record to demonstrate that once Noah's took over operation of the plant, Noah's falsely represented that UniFirst was still engaged in business dealings with Prime, which UniFirst relied upon to its detriment. On appeal, Noah's merely reargues the evidence, but such is unpersuasive where there is ample evidence in the record to support the court's findings. For example, Noah's points to evidence in the record that UniFirst had knowledge concerning Noah's, because after January 2, 2015, Noah's issued payment checks to UniFirst. However, the evidence of the overall conduct of Noah's indicates that the payment checks do not merit significant weight, because third-party management companies commonly paid UniFirst's invoices.

Prime left the meatpacking operation in January 2015 with an account balance due to UniFirst. Noah's paid this amount

---

[8] See, *Perry v. Esch*, 240 Neb. 289, 481 N.W.2d 431 (1992); *State v. Nebraska Assn. of Pub. Employees, supra* note 4; *Wheat Belt Pub. Power Dist. v. Batterman*, 234 Neb. 589, 452 N.W.2d 49 (1990); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989); *Osmera v. School Dist. of Seward*, 216 Neb. 261, 343 N.W.2d 886 (1984); *Cavanaugh v. deBaudiniere*, 1 Neb. App. 204, 493 N.W.2d 197 (1992). See, also, 31 C.J.S. *Estoppel and Waiver* § 94 (2019).

on Prime's behalf. From 2015 to 2018, UniFirst expanded its business with Noah's by adding a new service route and by providing new price quotes and garments, at the request of Noah's. In a conversation in 2017, the chief financial officer (CFO) of Noah's acknowledged to UniFirst that there were 2 years remaining on the CSA. Noah's sought to terminate the CSA for cause based on the terms of the agreement, which illustrates that Noah's believed it was bound by the CSA, even though the CSA was executed between UniFirst and Prime.

Thus, the record supports the district court's determination that over a course of years, Noah's took actions which led UniFirst to reasonably believe Prime remained the owner of the meatpacking operation, and that Noah's obtained benefits under the CSA during this time. Other courts have rejected the argument Noah's asserts here, explaining "[Noah's] cannot have it both ways. It cannot rely on the contract when it works to its advantage and ignore it when it works to its disadvantage."[9] This assignment of error is without merit.

## SCOPE OF CSA

Noah's argues the parties' dispute is not within the scope of the CSA's arbitration provision. "Enforcement of an arbitration agreement involves two analytical steps: The first is contract formation—whether the parties entered into any arbitration agreement at all. The second involves contract interpretation to determine whether this claim is covered by the arbitration agreement."[10] Both questions involve contract interpretation and are for the court to decide.[11]

---

[9] See *PRM Energy Systems, Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 834 n.3 (8th Cir. 2010) (internal quotation marks omitted). See, also, *Tepper Realty Company v. Mosaic Tile Company*, 259 F. Supp. 688 (S.D.N.Y. 1966); *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994).

[10] *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 224, 912 N.W.2d 774, 789 (2018).

[11] See *id*. See, also, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed. 2d 832 (2009).

Noah's raised the issue of the scope of the arbitration provision in its motion to alter or amend and argued that the CSA defines "'Customer' to be 'Prime'" and that the arbitration provision includes "disputes between 'Prime' and 'UniFirst' only." But the district court found Noah's is estopped from contesting that it is bound by the CSA and the arbitration provision, and we agree. As explained in our analysis above, Noah's is bound by the CSA based on its conduct. This is so even though Noah's did not sign the agreement. Noah's argues this court should interpret the term "Customer" under the CSA as a limitation on the scope of the arbitration provision, but we find no difference between this argument and the arguments of Noah's regarding insufficient proof for UniFirst's equitable estoppel claim. As such, this argument is without merit.

Noah's argued the parties' have billing disputes based on transactions not involving garments specified in the CSA and that any such dispute would not be for arbitration and would remain for the court. However, Noah's does not point to any language in the CSA that would support this outcome. The arbitration provision in this case is unambiguous and broadly covers "all disputes of whatever kind" between the parties. This assignment of error is without merit.

## NOTICE

Noah's argues the court erred by deciding the case based upon an unpled estoppel theory. However, Noah's refers to dicta contained in the trial court's order, which the parties agreed at oral argument is not presented for consideration on appeal. It is undisputed that UniFirst did plead equitable estoppel as an affirmative defense, that the parties litigated UniFirst's theory during summary judgment proceedings, and that the theory was tried to the court. The trial court specifically found on this issue that "[Noah's] certainly had notice of [UniFirst's] affirmative defense of estoppel since the very outset of the litigation, and there is no evidence whatsoever that [Noah's] has been prejudiced by [UniFirst's] defense of equitable

estoppel." Noah's was afforded fair notice of the nature of the defense.[12] This assignment of error is without merit.

## New Arguments

[8] During the trial court proceedings, Noah's asserted that UniFirst had waived its arbitration rights by demanding the arbitration take place in Topeka, Kansas, though the CSA's arbitration provision required the arbitration to occur in Lincoln, Nebraska, by stating, "The arbitration shall be conducted in the capital city of the state where Customer has its principal place of business (or some other location mutually agreed to[)]." The court found UniFirst had merely made a mistake in demanding Kansas as the arbitration venue and found no evidence of waiver or prejudice. On appeal, Noah's argues that UniFirst's demand to arbitrate in Kansas constituted a breach of the CSA. However, this is a new argument not passed upon by the trial court. An appellate court will not consider an argument or theory that is raised for the first time on appeal.[13] This assignment of error is without merit.

## Admission of Evidence

[9,10] As a final matter, Noah's argues the court erred in admitting several statements and documents over hearsay objections. In a bench trial, the court is presumed to have considered only competent and relevant evidence in making its decision.[14] An abuse of discretion, warranting reversal of a trial court's evidentiary decision on appeal, occurs when a trial court's decision is based upon reasons that are untenable

---

[12] See *SFI Ltd. Partnership 8 v. Carroll*, 288 Neb. 698, 851 N.W.2d 82 (2014).

[13] *Eletech v. Conveyance Consulting Group*, 308 Neb. 733, 956 N.W.2d 692 (2021).

[14] See *Eicher v. Mid America Fin. Invest. Corp.,* 270 Neb. 370, 702 N.W.2d 792 (2005).

or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[15]

Noah's argues the court erred in admitting UniFirst's telephone conversation with a plant employee who stated that WR Reserve and Prime were the same entity; in admitting statements from the CFO of Noah's and a letter from UniFirst; and in admitting customer services reports, manager's major account visitation reports, and requests for customer action. Upon our review of the evidence, we find no abuse of discretion by the district court. We agree with UniFirst that the arguments of Noah's go to weight rather than admissibility and that they do not demonstrate any prejudice to a substantial right of Noah's.

First, we do not believe the telephone conversation with the plant employee and the statements made by the CFO of Noah's were hearsay because they were not offered to prove the truth of the matter asserted, but to prove the effect of the statements on the listener under Neb. Rev. Stat. § 27-801(3) (Cum. Supp. 2020). A statement offered to prove its impact on the listener, instead of its truth, is offered for a valid nonhearsay purpose if the listener's knowledge, belief, response, or state of mind after hearing the statement is relevant to an issue in the case.[16]

Second, the telephone conversation with the plant employee and the statements made by the CFO of Noah's were not hearsay because direct and circumstantial evidence in the record establishes they were made by agents of Noah's within the scope of their employment.[17] Moreover, it is evident that to the extent the parties' documents contained hearsay, foundation was laid to admit the evidence as business records under Neb. Rev. Stat. § 27-803(5) (Reissue 2016).[18] The district court

---

[15] *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

[16] See *Baker-Heser v. State*, 309 Neb. 979, 963 N.W.2d 59 (2021).

[17] See § 27-801(4)(b)(iv). See, also, *Bump v. Firemens Ins. Co.*, 221 Neb. 678, 380 N.W.2d 268 (1986).

[18] See *O'Brien v. Cessna Aircraft Co., supra* note 15.

did not abuse its discretion in overruling the evidentiary objections of Noah's. The appeal of Noah's is without merit.

## CONCLUSION

We affirm the district court's judgment dismissing the complaint of Noah's, lifting the stay, and directing Noah's to proceed in arbitration. There is no merit to any of the arguments of Noah's on appeal.

Affirmed.